BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
DREW LIMING, State Bar No. 305156
drew.liming@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Tel.: 650-618-9250

*Attorneys for Defendants Lilium N.V.,
Barry Engle, Daniel Wiegand, and
Geoffrey Richardson*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANIRAJ ASHIRWAD GNANARAJ, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LILIUM N.V. F/K/A QELL ACQUISITION CORP., BARRY ENGEL, DANIEL WIEGARD, and GEOFFREY RICHARDSON, <br><br> Defendants. | Case No.: 2:22-CV-02564-FMO-MRWx <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE** <br><br> Hearing Date: June 9, 2022 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 6D <br> Judge: Hon. Fernando M. Olguin |

REPLY ISO MOTION TO TRANSFER
CASE NO. 2:22-cv-02564-FMO-MRWx

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………... 1

ARGUMENT………………………………………………………………………………...2

I.    Plaintiff's Admitted Forum Shopping Deserves No Weight……………………3

II.   Plaintiff Admits That This District Has No Connection to the Facts in the Lawsuit…………………………………………………………………………... 5

III.  Convenience Favors Southern District of Florida………………………………8

IV.  Southern District of Florida Is Experienced With Securities Cases…………… 10

V.   Waiting to Transfer Would Waste Judicial Resources………………………….11

CONCLUSION…………………………………………………………………………..12

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ace Mold (Heifei) Co. v. Aliphcom*,
2016 U.S. Dist. LEXIS 187405 (C.D. Cal. Oct. 17, 2016)....................................... 4, 7

*Ahrens v. CTI BioPharma Corp.*,
2016 U.S. Dist. LEXIS 66139 (S.D.N.Y. May 19, 2016)....................................... 12

*Bondali v. Yum! Brands, Inc.*,
2013 U.S. Dist. LEXIS 196916 (C.D. Cal. May 1, 2013)............................. 2, 5, 12

*Ctr. for Med. Progress v. Becerra*,
2020 U.S. Dist. LEXIS 246351 (C.D. Cal. Nov. 12, 2020)....................................... 6

*In re Connetics Sec. Litig.*,
2007 U.S. Dist. LEXIS 38480 (S.D.N.Y. May 23, 2007)....................................... 9

*Ellis v. Costco Wholesale Corp.*,
372 F. Supp. 2d 530 (N.D. Cal. 2005).................................................................... 5

*Gen. Ret. Sys. v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*,
2009 U.S. Dist. LEXIS 130360 (N.D. Cal. July 16, 2009)....................................... 5

*Global Décor, Inc. v. Cincinnati Ins. Co.*,
2011 U.S. Dist. LEXIS 64529 (C.D. Cal. June 16, 2011)................................... 9, 10

*Herman v. W. Union Co.*,
2017 U.S. Dist. LEXIS 221047 (C.D. Cal. Mar. 30, 2017)................................... 11

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000)................................................................................. 3

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987)................................................................................. 5

*LRN Corp. v. RGA Reinsurance Co.*,
2015 U.S. Dist. LEXIS 190391 (C.D. Cal. Jan. 20, 2015)....................................... 4

*Metz v. United States Life Ins. Co.*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009).................................................................. 3

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999).................................................................. 12

Page(s)

*Par Pharm., Inc. v. Fleming & Co.*,
  2009 U.S. Dist. LEXIS 137104 (S.D. Cal. Sept. 18, 2009)........................................ 2

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)..................................................................................... 3

*Rafton v. Rydex Series Funds*,
  2010 U.S. Dist. LEXIS 75411 (N.D. Cal. June 29, 2010)........................................... 8

*Royal Queentex Enters. v. Sara Lee Corp.*,
  2000 U.S. Dist. LEXIS 10139 (N.D. Cal. Mar. 1, 2000)........................................... 10

*Sanchez v. Centene Corp.*,
  2017 U.S. Dist. LEXIS 227407 (C.D. Cal. Mar. 1, 2017).............................. 8, 9, 10

*Secondary Life Three Llc v. Transamerica Life Ins. Co.*,
  2021 U.S. Dist. LEXIS 103933 (C.D. Cal. Feb. 24, 2021)........................................ 3

*Sec. Investor Prot. Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985)....................................................................... 2

*Sid Murdeshwar v. Searchmedia Holdings Ltd.*,
  No. 2:10-cv-06794-DSF-JEM (C.D. Cal. Feb. 16, 2011)........................................ 11

*Smithson v. Jackson Nat'l Life Ins.*,
  2018 U.S. Dist. LEXIS 225818 (C.D. Cal. May 29, 2018)....................................... 5

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
  2013 U.S. Dist. LEXIS 121976 (C.D. Cal. Aug. 26, 2013)...................................... 4

*Wasson v. LogMeIn, Inc.*,
  2018 U.S. Dist. LEXIS 223718 (C.D. Cal. Nov. 2, 2018)............................... *passim*

*In re Yahoo! Inc.*,
  2008 U.S. Dist. LEXIS 20605 (C.D. Cal. Mar. 10, 2008)........................... 3, 4, 6, 8

Other Authorities

*Edgar Company Search Reports: Lilium N.V.*, SEC.gov,
  https://www.sec.gov/edgar/browse/?CIK=1855756 (as of May 23, 2022).............. 7

*LILM: Lilium B.V. SEC CIK 1855756 Report,* SEC.report,
  https://sec.report/Ticker/lilm (as of May 23, 2022)................................................ 7

*Securities Class Action Clearinghouse*, Stanford Law School,
  http://securities.stanford.edu/filings.html (last visited May 21, 2022)................... 11

**INTRODUCTION**

Who is Mr. Gnanaraj?  A Singapore resident, Mr. Gnanaraj sued Lilium, a European company, in the Central District of California on behalf of a nationwide class.  He opposes transfer to Florida, the location of Lilium's principal U.S. operations.

Why this anomaly?  In his Opposition to Defendants' motion to transfer, Mr. Gnanaraj now concedes that he has no connection to this district.  He admits that none of the facts at issue occurred in this district.  He further acknowledges that none of the Defendants are located in this district.  By contrast, he does not dispute that some of the events at issue, some of the key documents being challenged, and some of the likely witnesses would all be located in the Southern District of Florida.

The only basis for filing this lawsuit in the Central District of California is the convenience of Plaintiff's counsel—to which courts give no deference.  In his Opposition, Plaintiff claims that it is easier for him to travel to California than to Florida.  Yet, in the same breath, Plaintiff refuses to appear in person at the upcoming hearing on this very motion, pleading inconvenience.  Without Plaintiff's appearance at the hearing, it is not clear if he is aware of this motion or even authorized the filing of this action in the Central District of California.  In any event, courts in this district have repeatedly held that Plaintiff's choice of forum is entitled to no deference where the action is brought on behalf of a nationwide class.  As importantly, in securities class actions, the initial filer is often displaced by a Court-appointed lead plaintiff, making his venue preference even less relevant.

Plaintiff's remaining arguments are equally flawed.  Plaintiff misstates the standard applicable to motions to transfer—knowing that he cannot meet the correct standard required by the Ninth Circuit.  Plaintiff relies on incorrect facts, mischaracterizing information from third-party services as purported "filings" with the Securities and Exchange Commission, and even altering *actual* SEC filings in an effort

to buttress his claims. That Plaintiff has to resort to such an approach bespeaks the weakness of his position.

Filing the lawsuit here advances no purpose other than the convenience of Plaintiff's counsel. The Court should reject Plaintiff's counsel's attempt to circumvent the Congressional measures against lawyer-driven securities litigation.

**ARGUMENT**

Defendants[1] explained why transferring this lawsuit to the Southern District of Florida is warranted under both prongs of Section 1404(a). Mot. at 4-12. In his Opposition, Plaintiff explicitly conceded that transfer is appropriate pursuant to Section 1404(a)'s first prong, because this lawsuit "might have been brought" in the Southern District of Florida. Opp. at 3 ("Plaintiff does not contest this action could have been brought in the Southern District of Florida"). His challenge to Section 1404(a)'s second prong—the interest of justice and convenience— fails. *Id.* at 3-12.

As an initial matter, Plaintiff creates an erroneously high bar for when transfer is warranted. He claims that "a court should only grant a request to transfer if 'the balance of factors is strongly in favor of the defendants.'" Opp. at 3-4 (citing *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). As Judge Tucker explained, Plaintiff's authority is inapposite because *Vigman* "did not involve a motion to transfer venue, but rather the initial laying of venue." *Bondali v. Yum! Brands, Inc.*, 2013 U.S. Dist. LEXIS 196916, at *14 (C.D. Cal. May 1, 2013). The "strong showing" standard is incorrect for motions to transfer because courts have "more latitude to transfer a case under § 1404 than dismiss a case under the doctrine of forum non conveniens." *Par Pharm., Inc. v. Fleming & Co.*, 2009 U.S. Dist. LEXIS 137104, at *17 (S.D. Cal. Sept. 18, 2009) (transferring lawsuit; explaining that "the 'clear and convincing' (or 'strong showing') standard descends specifically from the forum non

---

[1] Plaintiff's Opposition lists Stephen A. Arnall as a defendant in this lawsuit. Opp. at 2. Defendants do not know who Mr. Arnall is, and he is not named in the Complaint. His inclusion may have resulted from a copy-and-paste error.

REPLY ISO MOTION TO TRANSFER      2
CASE NO. 2:22-cv-02564-FMO-MRWx

conveniens context"). The correct standard for a motion to transfer is that set by the Ninth Circuit: "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). This standard compels transfer.

## I.   Plaintiff's Admitted Forum Shopping Deserves No Weight

Plaintiff claims that his selection of this court "should be afforded great weight." Opp. at 8 n.6. Plaintiff is wrong for two reasons.

***First***, after redacting his location on his sworn declaration, Plaintiff now admits that he does not even reside in this district. Opp. at 1. In fact, pressed to appear at a hearing in this district, Plaintiff admits that he does not reside in the United States at all. *Id.* Plaintiff persists, however, in claiming that, despite being a foreign plaintiff, his selection of this court "should be afforded great weight." *Id.* at 8 n.6. His assertion runs afoul of the instructions of the Supreme Court that a foreign plaintiff's choice of forum "deserves less deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981); *see also Metz v. United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009) (Otero, J.) (same; granting transfer). As Defendants previously explained, courts give a foreign plaintiff's selected forum little weight and routinely transfer such cases. Mot. at 9; *see also In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, at *20 (C.D. Cal. Mar. 10, 2008) (Snyder, J.) ("where the class plaintiffs are not residents of the chosen forum, their chosen forum deserves no special treatment"). Plaintiff did not address *any* of Defendants' numerous authorities on this point.

Plaintiff also admits that his only connection to this district is that his counsel has an office here. Opp. at 10. But it is not clear whether Plaintiff actually selected this forum himself, or if his counsel did so for personal convenience. Mot. at 10. It is not even clear whether Plaintiff affirmatively authorized his counsel's choice of forum.

Either way, as Defendants previously explained, "convenience of counsel is not a sufficient reason to avoid transferring venues." *Secondary Life Three Llc v.*

REPLY ISO MOTION TO TRANSFER                    3
CASE NO. 2:22-cv-02564-FMO-MRWx

*Transamerica Life Ins. Co.*, 2021 U.S. Dist. LEXIS 103933, at *6 (C.D. Cal. Feb. 24, 2021) (Birotte Jr., J) (granting transfer); Mot. at 10.  As Judge Anderson held in a case involving this same plaintiffs' counsel, giving weight to plaintiffs' counsel's convenience "would allow a party to manufacture convenience merely by selecting counsel in a preferred venue." *Wasson v. LogMeIn, Inc.*, 2018 U.S. Dist. LEXIS 223718, at *9 (C.D. Cal. Nov. 2, 2018) (granting transfer).  In similar circumstances, Judge Lew transferred a lawsuit filed by a non-U.S. plaintiff that was "only tethered to this forum by its attorney's Los Angeles office." *Ace Mold (Heifei) Co. v. Aliphcom*, 2016 U.S. Dist. LEXIS 187405, at *5 (C.D. Cal. Oct. 17, 2016).  The same applies here.[2]

   ***Second***, Plaintiff is also incorrect that the venue provision of the Securities Exchange Act of 1934 ("Exchange Act") imbues his handpicked forum with any weight.  Opp. at 4-5.  Courts in this district have considered and rejected Plaintiff's exact argument.  As Judge Snyder explained, the venue provision of the Exchange Act applies to where lawsuits may be filed, but "[n]othing in [the Exchange Act] prevents the Court from determining whether this action should be transferred[.]" *Yahoo!*, 2008 U.S. Dist. LEXIS 20605, at *16-22 (transferring securities class action).  The fact that the Exchange Act contains a venue provision is irrelevant: "Section 1404(a) applies to 'any civil action,' including actions governed by special venue provisions." *Id.* at *19.  Judge Gutierrez agreed, holding "[t]hat venue in this case is governed by the special venue provision of the Exchange Act, rather than the general venue statute found in 28 U.S.C. § 1391, does not change the transfer analysis under § 1404(a)." *Vanleeuwen v.*

---

[2] Plaintiff's reliance on *LRN Corp. v. RGA Reinsurance Co.*, 2015 U.S. Dist. LEXIS 190391 (C.D. Cal. Jan. 20, 2015) (Wilson, J.), is misplaced.  Opp. at 10.  The plaintiff in *RGA* had offices in this district, so transfer would have increased the costs of litigation to the plaintiff.  Plaintiff here has no connection to this district.

*Keyuan Petrochemicals, Inc.*, 2013 U.S. Dist. LEXIS 121976, at *25 (C.D. Cal. Aug. 26, 2013) (transferring securities class action).[3]

That this is a securities class action further diminishes the weight given to Plaintiff's selected forum.  Even Plaintiff concedes that in the Ninth Circuit it is black-letter law that "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); Opp. at 4.  Nor does Plaintiff dispute that his "choice of forum should be accorded minimal weight" because the "case is a nationwide class action." *Yum! Brands*, 2013 U.S. Dist. LEXIS 196916, at *15.

In sum, Plaintiff "should be discouraged from forum shopping." *LogMeIn*, 2018 U.S. Dist. LEXIS 223718, at *7 (citation omitted) (granting transfer).  His "choice of forum should receive little deference" because he "does not reside in California" and "seeks to represent a nationwide class on claims that have little to do with California." *Smithson v. Jackson Nat'l Life Ins. Co.*, 2018 U.S. Dist. LEXIS 225818, at *7 (C.D. Cal. May 29, 2018) (Olguin, J.) (granting transfer).

## II.   Plaintiff Admits That This District Has No Connection to the Facts in the Lawsuit

The Ninth Circuit has held that "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or the subject matter, [the

---

[3] Plaintiff's authorities do not support his extreme reading of the Exchange Act.  Opp. at 4-5.  In *Wells Fargo*, the court agreed that the Exchange Act's "special venue provision does not *enhance* the deference afforded to plaintiffs' choice[.]" *Gen. Ret. Sys. v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*, 2009 U.S. Dist. LEXIS 130360, at *21 (N.D. Cal. July 16, 2009) (emphasis in original).  It declined to transfer the case because both the plaintiff and defendant resided in that district.  *Id.* at *22.  *Costco* is similarly inapposite.  *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530 (N.D. Cal. 2005).  As Judge Tucker has explained, *Costco* is distinguishable because it "was a Title VII employment discrimination case and plaintiffs' chosen venue was the district where plaintiffs alleged 'they would have worked but for the alleged unlawful employment practices'" and was "home to a proportionately large segment of the putative class." *Yum! Brands*, 2013 U.S. Dist. LEXIS 196916, at *15 (quoting *Costco*, 372 F. Supp. 2d at 542-543).

REPLY ISO MOTION TO TRANSFER                              5
CASE NO. 2:22-cv-02564-FMO-MRWx

plaintiff's] choice is entitled to only minimal consideration." *Belzberg*, 834 F.2d at 739; *see also* Mot. at 6-7. Despite the Ninth Circuit's clear instructions, Plaintiff claims that this district has a significant interest in this case. Opp. at 5-7. Plaintiff is incorrect for the following four reasons.

*First*, Plaintiff repeatedly claims that this lawsuit belongs in this district because of Defendants' connections with California *outside* of this district. For example, Plaintiff claims that Qell Acquisition Corp. was headquartered in San Francisco (Opp. at 1) and that Defendant Engle works in San Francisco (*Id.* at 6). As an initial matter, the location of Qell is irrelevant to Lilium. Plaintiff appears to have the mistaken belief that Lilium merged into Qell, when the opposite is true. Liming Decl., Ex. 1 at 1. And, regardless of Qell's relevance, San Francisco is obviously not in this district. The relevant contacts are those between this lawsuit and this district, not California at large. Courts here regularly transfer cases that are connected to parts of California outside this district. *See, e.g., Ctr. for Med. Progress v. Becerra*, 2020 U.S. Dist. LEXIS 246351, at \*15-16 (C.D. Cal. Nov. 12, 2020) (Staton, J.) (transferring case because "the center of gravity of this action is in San Francisco"); *Yahoo!*, 2008 U.S. Dist. LEXIS 20605, at \*15 (transferring case because "relevant facts relating to plaintiffs claims undisputably occurred in the Northern District").[4]

*Second*, even if connections with California at large *were* relevant, Plaintiff is incorrect that Lilium has a "U.S. headquarters in San Francisco, CA." Opp. at 2. Lilium does not have *any* office—much less a U.S. headquarters—in San Francisco or anywhere else in California. Brown Decl. ¶¶ 1, 6. Plaintiff's assumption appears to be

---

[4] Plaintiff engages in sleight of hand by claiming this lawsuit has connections with California generally and not specifying that they are outside of this district. For example, Plaintiff claims that Cutler Group LP, one of Lilium's many institutional shareholders, is "headquartered in California." Opp. at 2. He omits that they are headquartered in San Francisco. There is also no reason why the location of Cutler Group—a non-party to this lawsuit—is relevant. Plaintiff does not claim that Cutler Group has any information related to this lawsuit or would be a witness.

based on incorrect data pulled from a third-party website.  Rosen Decl., Ex. 3.[5] Although Plaintiff's counsel states in his sworn declaration that the information is from the "SEC website" (Rosen Decl. ¶ 4), the website itself explicitly states that it "is not affiliated with the U.S. S.E.C. or EDGAR System."  The *actual* SEC website correctly states that Lilium's headquarters is in Germany—not California.[6]  Lilium's SEC filings also show that it is headquartered in Germany, with its principal U.S. presence in Boca Raton, Florida.  Liming Reply Decl., Ex. 2 at 1; *see also* Brown Decl. ¶ 1.[7]

*Third*, Plaintiff makes a similar baseless assumption when he claims that "Lilium actively conducts business within California."  Opp. at 6.  His supposition appears to be based on the fact that Lilium's U.S. subsidiary, Lilium Aviation Inc., is qualified to conduct business in California.  But the fact that Lilium Aviation is qualified to conduct business in California does not mean that Lilium "actively conducts business" within this district.  As the Company previously explained, Lilium does not have any employees or operations in this district.  Brown Decl. ¶ 6.  The registration also clearly states that Lilium Aviation Inc.'s principal address is Boca Raton, Florida—*not* California.  Rosen Decl., Ex. 4 at 2.  Plaintiff's sole claim is that the third party that Lilium Aviation Inc. hired to procure the registration "is in Marina Del Rey, CA[.]"  Opp. at 6.  But this lawsuit has nothing to do with Lilium Aviation Inc.'s vendors.  *See Aliphcom*, 2016 U.S. Dist. LEXIS 187405, at *3-4 (transferring lawsuit to district where "decisions and drafting" of relevant documents took place despite the fact that "Defendant frequently conducts business here").  Instead, it is

---

[5] *LILM: Lilium B.V. SEC CIK 1855756 Report*, SEC.report, https://sec.report/Ticker/lilm (as of May 23, 2022).

[6] *Edgar Company Search Reports: Lilium N.V.*, SEC.gov, https://www.sec.gov/edgar/browse/?CIK=1855756 (as of May 23, 2022).

[7] Plaintiff's counsel appears to have tampered with the SEC filings in Exhibit 5 to his declaration.  Rosen Decl., Ex. 5 at 1-2.  He appears to have added text to the SEC filings that does not actually exist in the actual filings.

REPLY ISO MOTION TO TRANSFER                    7
CASE NO. 2:22-cv-02564-FMO-MRWx

based on alleged false statements that were drafted, reviewed, and issued, in part, by Lilium's U.S. legal department, which is in Boca Raton.

*Finally,* Plaintiff is wrong that the Court should decline to transfer simply because "California investors have likely been harmed as a result of alleged misstatements that entered this District[.]" Opp. at 7.  If Plaintiff were correct, courts would *never* transfer nationwide securities class actions.  But as Defendants pointed out, courts in this district routinely transfer such lawsuits.  Mot. at 7.  "Because this is a securities fraud action, plaintiffs' claims are based on defendants' alleged misrepresentations and omissions, which 'are deemed to occur in the district where they are transmitted or withheld, *not where they are received.*'"  *Yahoo!*, 2008 U.S. Dist. LEXIS 20605, at *24 (emphasis added) (citation omitted); *see also Sanchez v. Centene Corp.*, 2017 U.S. Dist. LEXIS 227407, at *5-6 (C.D. Cal. Mar. 1, 2017) (Birotte Jr., J.) (transferring lawsuit because "[w]hile some plaintiffs purchased their securities in this district, that does not outweigh the fact that Centene's alleged false statements occurred in the Eastern District of Missouri"); Mot. at 7.  In his Opposition, Plaintiff failed to address any of Defendants' authorities rejecting his conjecture.[8]

In sum, Plaintiff concedes that there are no connections between this lawsuit and this district.  Transfer to the Southern District of Florida—which does have a connection to the allegations in this lawsuit—is thus warranted.

### III.   Convenience Favors Southern District of Florida

Transferring the lawsuit to the Southern District of Florida promotes efficiency and convenience.  Mot. at 11-12.  Plaintiff's arguments to the contrary are wrong for the following reasons.

---

[8] Plaintiff's sole case is distinguishable because there, the plaintiff was "a resident of his chosen forum[,]" which the court "considered significant." *Rafton v. Rydex Series Funds*, 2010 U.S. Dist. LEXIS 75411, at *8-9 (N.D. Cal. June 29, 2010).  Here, Plaintiff does not reside in the U.S., much less this district.

REPLY ISO MOTION TO TRANSFER                                8
CASE NO. 2:22-cv-02564-FMO-MRWx

*First*, Plaintiff cannot credibly claim that this district is more convenient for potential witnesses.  He did not dispute that, in securities lawsuits, the "key witnesses are frequently officers and employees of [the issuer] who participated in drafting or distributing allegedly false and misleading statements." Mot. at 11 (quoting *In re Connetics Sec. Litig.*, 2007 U.S. Dist. LEXIS 38480, at *10 (S.D.N.Y. May 23, 2007) (alteration in original) (citation omitted) (granting transfer)).  Nor does Plaintiff dispute that the drafting and dissemination of the disclosures at the heart of his Complaint took place, in part, in Boca Raton.  He completely ignores Defendants' authority holding that "litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions." Mot. at 12 (citing *Global Décor, Inc. v. Cincinnati Ins. Co.*, 2011 U.S. Dist. LEXIS 64529, at *14 (C.D. Cal. June 16, 2011) (citation omitted)).

Although Plaintiff accuses Defendants of "merely stat[ing], in conclusory fashion" that the Southern District of Florida is more convenient for witnesses (Opp. at 9), Defendants identified the specific department responsible for the challenged statements and where it is located.  Mot. at 3, 11-12.  Plaintiff, on the other hand, has not identified a *single* witness in this district.  And Plaintiff's arguments regarding depositions and compulsory testimony (Opp. at 8-10) apply with equal (if not more) force to litigating in the Southern District of Florida, given the lack of any connection between Plaintiff's claims and this district.  Plaintiff—a foreign resident who is likely atypical of the nationwide class he seeks to represent—cannot even credibly claim that this district is convenient for him, given his refusal to travel here for a hearing on this motion.  *Id.* at 5 n.3.[9]

---

[9] Plaintiff is incorrect that Defendants must "submit an affidavit" identifying specific witnesses at this early stage of the litigation.  Opp. at 9.  Courts in this district transfer securities cases, where, as here, defendants show that the departments responsible for the challenged statements are located elsewhere.  *See LogMeIn*, 2018 U.S. Dist. LEXIS 223718, at *10 (transferring case to location of "employees of the Company's Renewals Team, and the employees who lead the Company's Legal, Sales, Investor Relations and Finance Departments"); *Centene Corp.*, 2017 U.S. Dist. LEXIS 227407,

REPLY ISO MOTION TO TRANSFER                    9
CASE NO. 2:22-cv-02564-FMO-MRWx

***Second***, Plaintiff's purported confusion about where relevant documents are located does not advance his cause. Opp. at 11 ("Plaintiff does not know where Defendants' documents are stored."). As Defendants explained, at least some of the relevant documents are located in Boca Raton. Mot. at 12. None are located in this district. Plaintiff's contention that producing documents in this district weighs against transfer and will not be burdensome (Opp. at 11) ignores authority holding otherwise. *See* Mot. at 12 (citing *Cincinnati Ins.,* 2011 U.S. Dist. LEXIS 64529, at *15 ("[T]he possibility that documents can be produced electronically does not alter the conclusion that the cost of litigation will likely be less if the case were venued in the forum where the evidence is located.") (citation omitted)).

**IV.     Southern District of Florida Is Experienced With Securities Cases**

Plaintiff admits that "[t]he Central District of California and Southern District of Florida are both capable of adjudicating this federal securities class action." Opp. at 11. Plaintiff also does not dispute that Florida has a "greater local interest because of its interest in ensuring that corporations doing business within its borders comply with federal securities law." Mot. at 13 n.3 (quoting *Centene Corp.*, 2017 U.S. Dist. LEXIS 227407, at *6-7).

Plaintiff's sole argument is that courts here "are more experienced" simply because more securities cases have been filed in this district than in the Southern District of Florida over the last 25 years. Opp. at 11. One reason, however, for the prevalence of cases filed in this district is that Plaintiffs' counsel regularly files cases here regardless of where they truly belong. Such cases are then transferred to the appropriate districts, so the merits are not actually adjudicated here. *See LogMeIn*,

---

at *4 ("Centene departments and personnel responsible for Centene's financial analysis and financial reporting will be key witnesses"). Plaintiff's sole citation (Opp. at 9) is distinguishable because it was a trademark infringement case. *Royal Queentex Enters. v. Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139 (N.D. Cal. Mar. 1, 2000). Securities cases are subject to a discovery stay pursuant to the PSLRA, so the factual record is not nearly as developed as in *Sara Lee*.

REPLY ISO MOTION TO TRANSFER                              10
CASE NO. 2:22-cv-02564-FMO-MRWx

2018 U.S. Dist. LEXIS 223718, at *3 (transferring securities case filed by same plaintiffs' counsel).  For example, Judge Fischer previously transferred a securities case from here to the Southern District of Florida.  Minute Order in Chambers, *Sid Murdeshwar v. Searchmedia Holdings Ltd.*, No. 2:10-cv-06794-DSF-JEM (C.D. Cal. Feb. 16, 2011), ECF No. 33.  Plaintiff also cannot credibly claim that the judges in the Southern District of Florida lack experience with securities cases:  Since 2015, nearly 50 have been filed there.[10]

## V.      Waiting to Transfer Would Waste Judicial Resources

Plaintiff incorrectly suggests that the Court delay deciding this motion to transfer as "premature" simply because no lead plaintiff has been appointed yet.  Opp. at 11-12.  But it would waste judicial resources to have a court in this district—which has no connection to the lawsuit—appoint a lead plaintiff, only to then transfer the lawsuit.  In addition, if this Court were to appoint Plaintiff as lead plaintiff, he would then likely argue that the Court should keep this case because it has already invested time in it.  The Court would then end up adjudicating a dispute that has no connection to this district.

The proper procedure is to leave the decision as to  who should be appointed lead plaintiff and lead counsel to the Southern District of Florida.  *See Herman v. W. Union Co.*,  2017 U.S. Dist. LEXIS 221047, at *8 n.3 (C.D. Cal. Mar. 30, 2017) (Marshall, J.) (granting transfer and "defer[ing] ruling on the pending motions for appointment of counsel and lead plaintiff" to transferee court).  Courts in this district have repeatedly rejected Plaintiff's exact argument for delaying transfer, including when made by the same plaintiffs' counsel.  In *LogMeIn*, for example, Judge Anderson held that the "possibility that a lead plaintiff might prefer litigating in this District is no reason to delay deciding" a motion to transfer until after a lead plaintiff is appointed. 2018 U.S. Dist. LEXIS 223718, at *3 (granting transfer).  He explained that courts in

---

[10] *Securities Class Action Clearinghouse*, Stanford Law School, http://securities.stanford.edu/filings.html (last visited May 21, 2022).

REPLY ISO MOTION TO TRANSFER                    11
CASE NO. 2:22-cv-02564-FMO-MRWx

this district "decide[] motions to transfer before motions for lead plaintiff[.]" *Id.*; *see also Yum! Brands*, 2013 U.S. Dist. LEXIS 196916, at *13 (rejecting argument that "a motion to transfer venue is not ripe until after the appointment of lead plaintiff").

Plaintiff provides no rationale for why the Court should defer to the preferred forum of a non-U.S. resident (and his local counsel) simply because he was the first to file. This case should not have been filed in this district in the first instance. There is no reason to delay correcting Plaintiff's error. Here, like in *LogMeIn*, there is "no reason to take a different course[.]" 2018 U.S. Dist. LEXIS 223718, at *3.[11]

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this action be transferred to the United States District Court for the Southern District of Florida.

Dated: May 26, 2022        Respectfully submitted,

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: /s/ *Boris Feldman*
      Boris Feldman

*Attorneys for Defendants*

---

[11] Plaintiff's case undermines his own position. Opp. at 12. In *Ahrens v. CTI BioPharma Corp.*, the court did not delay ruling on a motion to transfer until after it appointed a lead plaintiff, as Plaintiff requests. 2016 U.S. Dist. LEXIS 66139 (S.D.N.Y. May 19, 2016). Instead, the court asked the various lead plaintiff candidates, who had *already* filed motions to be appointed lead plaintiff, for their position on the motion to transfer. *Id.* at *4-5. It then transferred the case *before* appointing a lead plaintiff. *Id.* at *11. Plaintiff's other case, *In re Network Assocs. Sec. Litig.*, was not even ruling on a motion to transfer venue to a different district. 76 F. Supp. 2d 1017, 1034-35 (N.D. Cal. 1999).