**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-80232-ROSENBERG/REINHART**

MANIRAJ ASHIRWAD GNANARAJ,
Individually and on Behalf of All Others
Similarly Situated,

          Plaintiffs,

          -v.-

LILIUM N.V. F/K/A QELL ACQUISITION
CORP. *et al.*,

          Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

<table>
<tr><td>

**SHRAIBERG PAGE P.A.**

Bradley S. Shraiberg
Florida Bar No. 121622
Patrick Dorsey
Fla Bar No. 0085841
2385 NW Executive Center Dr Ste 300
Boca Raton, FL 33431-8530
Telephone: (561) 443-0800
Email: bss@slp.law
      pdorsey@slp.law

</td><td>

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**

Boris Feldman
Doru Gavril
855 Main Street
Redwood City, CA
Telephone: (650) 618-9250
Email: boris.feldman@freshfields.com
      doru.gavril@freshfields.com

Adam Rosenfeld
Susannah Benjamin
601 Lexington Ave
New York, NY 10022
Telephone: (212) 277-4000
Email: adam.rosenfeld@freshfields.com
      susannah.benjamin@freshfields.com

</td></tr>
</table>

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ……………………………………………………………… 1

ARGUMENT……………………………………………………………………………………...1

I. THE OPPOSITION CONFIRMS PLAINTIFF DOES NOT STATE A FRAUD CLAIM
UNDER SECTION 10(b) ………………………………………………………………………... 1

   A. The PSLRA's Safe Harbor Applies…………………………………………………………...1

   B. Plaintiff Fails to Identify Any Material False Statement or Omission……………………..2

      1. No False Statements regarding Batteries…………………………………………………...3

      2. No False Statements regarding Hover Time…………………………………………….4

      3. No False Statements regarding Range…………………………………………………...5

      4. No False Statements regarding Timeline to Certification…………………………..6

   C. Plaintiff's Scienter Allegations Fail to Plead Any Defendant's State of Mind……………6

      1. Plaintiff Fails to Allege Actual Knowledge……………………………………………...6

      2. Plaintiff's Allegations are Insufficient to Infer Scienter………………………….. 9

   D. Plaintiff Fails to Plead Loss Causation………………………………………………... 10

II. PLAINTIFF FAILS ADEQUATELY TO PLEAD SCHEME LIABILITY…………………..11

III. PLAINTIFF ALSO FAILS TO STATE A CLAIM UNDER SECTION 14(a)…………….... 13

   A. Given that His Claims Sound in Fraud, Plaintiff Fails to Plead Scienter……………. 14

   B. Plaintiff Still Fails to Plead the Proxy Was an "Essential Link" to Any Harm……….15

IV. PLAINTIFF ALSO FAILS TO STATE A SECURITIES ACT CLAIM…………………… 15

CONCLUSION……………………………………………………………………………………..15

## TABLE OF AUTHORITIES

**Cases** **Page**

*In re Alphabet Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ...…….....……………………………………………12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ………....……………………………………………....10

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
    757 F. Supp. 260 (S.D.N.Y. 2010) ……..……………………………….......... 15

*In re Bemis Co. Sec. Litig.*,
    512 F. Supp. 3d 518 (S.D.N.Y. 2021) …….....…………………………... 14

*Bond Opportunity Fund v. Unilab Corp.*,
    2003 WL 21058251 (S.D.N.Y. May 9, 2003),
    *aff'd*, 87 F. App'x 772 (2d Cir. 2004) …………………………………………14

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) …………………………………………....14

*In re CarLotz, Inc. Sec. Litig.*,
    2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ………………………………...2

*Carvelli v. Ocwen Fin. Corp.*,
    2018 WL 4941110 (S.D. Fla. Apr. 30, 2018),
    *aff'd*, 934 F.3d 1307 (11th Cir. 2019) ……………………………………... 7

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
    2023 WL 27154 (S.D. Fla. Jan. 3, 2023) …………………………………….. 8

*Davidoff v. Farina*,
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ………………………………….. 9

*Dura Pharm., Inc. v. Broudo*,
    544. U.S. 336 (2005) …………………………………………………...10

*Durgin v. Mon*,
    415 F. App'x 161 (11th Cir. 2011) …………………………………………9

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
    595 F. Supp. 2d 1253 (M.D. Fla. 2009),
    *aff'd,* 594 F.3d 783 (11th Cir. 2010)…………………………………….. 9

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
    594 F.3d 783 (11th Cir. 2010) ………..………………………………...2, 15

**Page**

*In re EHang Holdings Ltd. Sec. Litig.*,
  2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022) ………..………………………………….. 1

*Einhorn v. Axogen, Inc.*,
  42 F.4th 1218 (11th Cir. 2022) ………………………………………………..3, 4

*In re Envision Healthcare Corp.*,
  2019 WL 3494407 (D. Del. Aug. 1, 2019) …………………………………………15

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006)………………………………………………….. 8

*Gould v. Am.-Haw. S.S. Co.*,
  535 F.2d 761 (3d Cir. 1976) ……………………………………………… 14

*Happy Tax Franchising v. Hill*,
  2023 WL 418820 (S.D. Fla. Jan. 5, 2023) …………………………………….. 12

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ……………………………………………...2

*Henningsen v. ADT Corp.*,
  161 F. Supp. 3d 1161 (S.D. Fla. 2015) ……………………………………………12

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
  660 F. App'x 850 (11th Cir. 2016) ……………………………………………… 12

*Inchen Huang v. Higgins*,
  443 F. Supp. 3d 1031 (N.D. Cal. 2020) …………………………………………… 9

*Jones v. Bank of Am.*,
  564 F. App'x 432 (11th Cir. 2014) …………………………………………………3

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) …………………………………………… 14

*Kleinman v. Elan Corp.*,
  706 F.3d 145 (2d Cir. 2013) …………………………………………………... 13

*In re KLX, Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017) …………………………………………… 5

*Knollenberg v. Harmonic, Inc.*,
  152 F. App'x 674 (9th Cir. 2005) ……………………………………………14

*Lee v. Frost*,
  2021 WL 3912651 (S.D. Fla. Sept. 1, 2021) …………………………………….. 14

**Page**

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
537 F.3d 913 (8th Cir. 2008) …………………………………………………….. 14

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019) ………………………………………………………… 11

*Luczack v. Nat'l Bev. Corp.*,
812 F. App'x 915 (11th Cir. 2020)…………………………………………...10

*MacPhee v. MiMedx Grp., Inc.*,
73 F.4th 1220 (11th Cir. 2023) …………………………………………………… 10

*McDowell v. Bracken*,
317 F. Supp. 3d 1162 (S.D. Fla. 2018) ………………………………………... 15

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ……………………………………….. 14

*Meyer v. Green*,
710 F.3d 1189 (11th Cir. 2013) …………..…………………………………… 10

*In re MiMedx Grp. Inc.*,
2021 WL 7210372 (N.D. Ga. Mar. 25, 2021) …………..…………………………….. 10

*Miyahira v. Vitacost.com, Inc.*,
715 F.3d 1257 (11th Cir. 2013) …………..……………………………………….. 2

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) …………..………………………………………8, 12

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
2023 WL 4418886 (N.D. Cal. May 24, 2023) ………..…..………………………………...7

*Pritchard v. Apyx Med. Corp.*,
2020 WL 1180731 (M.D. Fla. Mar. 11, 2020) ………..……………………………... 6

*Reiter on Behalf of Cap. One Fin. Corp. v. Fairbank*,
2016 WL 6081823 (Del. Ch. Oct. 18, 2016) ………..……………………………….. 9

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ……………………………………………………5

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ……………………………………………………3, 15

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) ………………………………………………… 15

**Page**

*RYH Props., LLC v. West*,
    2009 WL 10676645 (E.D. Tex. Aug. 3, 2009) …….……………………………………… 2

*SEC v. Complete Bus. Sols. Grp.*,
    538 F. Supp. 3d 1309 (S.D. Fla. 2021) …….…………………………………………… 12

*SEC v. Rio Tinto PLC*,
    41 F.4th 47 (2d Cir. 2022) ………...……………………………………………….....12

*Set Capital LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021) …….…………………………………………………… 6

*Sims v. Chase Home Fin., LLC*,
    2011 WL 13176725 (N.D. Ga. Aug. 30, 2011),
    *aff'd*, 471 F. App'x 877 (11th Cir. 2012) .……………………………………………….. 5

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) ………..……………………………………………… 4

*Tung v. Bristol-Myers Squibb Co.*,
    412 F. Supp. 3d 453 (S.D.N.Y. 2019) …………..…………………………………... 13

*Wagner v. First Horizon Pharm. Corp.*,
    464 F.3d 1273 (11th Cir. 2006) …………………….…………………………… 14

*Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*,
    2009 WL 4730315 (N.D. Ga. Dec. 4, 2009) …………….…..……………………… 13

*Wilson v. Great An. Indus., Inc.*,
    855 F.2d 987 (2d Cir. 1988) …………………..……………………………………..14

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ………..……………………………………... 5, 13

## Statutes

15 U.S.C. § 77z-2(a)(2) …………………………………………………………….. 2

15 U.S.C. § 78u–5(a)(2) ……………………………………………………………… 2

## Other Authorities

SEC Release Nos. 33-11048; 34-94546; IC-34549 (Mar. 30, 2022),
    https://www.sec.gov/rules/ proposed/2022/ 33-11048.pdf………………………………….. 2

*Air taxi pioneer Daniel Wiegand,* TUM Community (Mar. 18, 2019),
    https://shorturl.at/sFJW1 …………………………………………………………...13

**Page**

*Drones and air cabs: What the aviation revolution needs*, TUM News (Oct. 5, 2023),
https://shorturl.at/fkX47 ……………………………………………………………... 13

John Coates, *SPACs, IPOs and Liability Risk under the Securities Laws*, SEC (Apr. 8, 2021),
https://www.sec.gov/news/public-statement/spacs-ipos-liability-risk-under-securities-laws …… 2

*Lilium NV - The Losing Horse in the eVTOL Race,* Iceberg Research (Mar. 14, 2022),
https://shorturl.at/RVX34………………………………………………………………...11

*TUM Entrepreneurship Day*, TUM (Jun. 30, 2022),
https://shorturl.at/oxX69……………………………………………………………… 13

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| ¶ | Paragraphs of the Complaint |
| Ex. | Exhibits to the First and Second Declarations of Doru Gavril in Support of Defendants' Motion to Dismiss the Amended Complaint for Violations of the Federal Securities Law |
| ECF | Docket entries from *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. Feb 13, 2023) |
| MTD | Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. May 12, 2023), ECF No. 89 |
| Opp. | Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint, *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. July 12, 2023), ECF No. 96 |

## PRELIMINARY STATEMENT

Opportunistic lawsuits based on speculative and financially motivated hit-pieces are not what the federal securities laws are for. This is a textbook example of such a meritless action.

Lilium is building an electric, quiet, aircraft. Its prototypes are working, and its applications for certification by the US and EU agencies are progressing. It has recently raised nearly $292 million in a financing round in which insiders, including defendants, invested millions of dollars of their own money. Ex. 14 at 1; Ex. 15 at 2, 4.

This lawsuit is premised on Plaintiff's disagreement with Lilium's technology, battery design, and regulatory strategy. Plaintiff draws exclusively on a short-seller report that sought to cause Lilium's stock price to decline in order to turn a quick profit. But such disagreements and speculative investments cannot be the basis for pleading securities fraud. MTD at 7.

Plaintiff's Opposition fails to engage with the arguments and authorities Defendants raised in their Motion. First, Plaintiff is unable to plead a material false statement or omission. The challenged statements are all protected forward-looking statements or opinions. Second, Plaintiff is unable to plead scienter, the state of mind required for fraud. His flimsy allegations depend on inference and innuendo, claiming that Defendants were motivated by profit—a discredited theory that the Eleventh Circuit rejects. MTD at 14-17. And, indeed, why would Defendants be doubling down on their investments in Lilium, if they know the Company is destined to fail? This would be the most unusual fraud in history. Third, Plaintiff cannot plead loss causation: the short-seller report was timed so that it would coincide with nearly 200 million shares becoming available to trade. Plaintiff does not explain why it is plausible to assume the market reacted to the short-seller report rather than to a significant infusion of additional shares.

This is a lawsuit in search of a fraud. It should be dismissed with prejudice.

## ARGUMENT

I.    **THE OPPOSITION CONFIRMS PLAINTIFF DOES NOT STATE A FRAUD CLAIM UNDER SECTION 10(b)**

A.    **The PSLRA's Safe Harbor Applies**

Plaintiff contends that the Safe Harbor does not apply because (i) it does not shield de-SPACs and (ii) Lilium was not an "issuer" prior to going public. Opp. at 10. This is wrong.

**De-SPACs.** Unable to point to any court decision finding de-SPACs ineligible for safe harbor protection, Plaintiff instead parrots the views of Prof. John Coates. *Id.* First, the SEC has

proposed rules that would *remove* safe harbor protections from de-SPACs, underscoring that, as the law now stands, the safe harbor applies to de-SPACs.[1] Second, Prof. Coates' opinions are not law. Coates himself recognizes as much in the article Plaintiff cites, Opp. at 10 & n.6, noting that his statement "represents the views of the [author]" only, does not purport to be "a rule, regulation, or statement of the SEC," and "has no legal force or effect."[2] Earlier this year, Plaintiff's counsel tried to make the same specious argument, only to have it flatly rejected by Judge Abrams: "Neither Coates' statement nor the proposed agency rule . . . creates controlling legal authority for this Court." *In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *8 (S.D.N.Y. Mar. 31, 2023). The Court should reject Plaintiff's second attempt to cause a court to legislate.

**Issuer.** Plaintiff's argument that Lilium was not an "issuer" with respect to statements before the de-SPAC is incorrect. Opp. at 10. The challenged statements were made by and in Qell's SEC filings, and Qell was obviously an issuer. *E.g.*, ¶¶ 172, 175-77, 181-83, 191-95. Plaintiff identifies Lilium as Qell's successor entity in the caption and the Complaint. *E.g.*, ¶¶ 2, 12. Each of the challenged presentations was preceded by an explicit reference to applicability of the Safe Harbor for forward-looking statements. *E.g.*, Ex. 7 at 2, Ex. 8 at 2, Ex. 16 at 1, Ex. 17 at 1. The Safe Harbor also applies to statements made by individuals, *e.g.*, ¶¶ 175-77, 181-82, 184, 194-95, because they were persons acting on behalf of an issuer. 15 U.S.C. § 78u–5(a)(2); 15 U.S.C. § 77z-2(a)(2); *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999).[3]

Even without the Safe Harbor, forward-looking statements are inactionable under the common law "bespeaks caution" doctrine, "whose statutory equivalent is the PSLRA safe harbor provision." *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 796 (11th Cir. 2010) (internal quotation marks omitted); *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1266 (11th Cir. 2013) (PSLRA safe harbor is "statutory equivalent" of bespeaks caution doctrine).

**B.     Plaintiff Fails to Identify Any Material False Statement or Omission**

The Opposition abandons any challenge to statements regarding Defendants' financial projections, ¶¶ 221-24; MTD at 13, and partnerships with Palantir and Azul, ¶¶ 245-46, 248-49;

---

[1] *See* SEC Release Nos. 33-11048; 34-94546; IC-34549 (Mar. 30, 2022), https://www.sec.gov/rules/proposed/2022/33-11048.pdf.

[2] John Coates, *SPACs, IPOs and Liability Risk under the Securities Laws*, SEC (Apr. 8, 2021), https://www.sec.gov/news/public-statement/spacs-ipos-liability-risk-under-securities-laws.

[3] The only case Plaintiff cites is readily distinguishable. It was not a securities class action, and concerned statements made by a limited partnership, which is expressly carved out from the Safe Harbor. *RYH Props., LLC v. West*, 2009 WL 10676645 (E.D. Tex. Aug. 3, 2009).

MTD at 11-12. Failure to respond to points in Defendants' motion constitutes concession. *See Jones v. Bank of Am.*, 564 F. App'x 432, 434 (11th Cir. 2014). Plaintiff fails to revive the remaining statements regarding batteries, hover time, range, and timeline.

### 1. No False Statements regarding Batteries

Plaintiff does not contest that Lilium had secured an exclusive license to batteries capable of >330Wh/kg. ¶ 176. He argues instead that investors believed Lilium could achieve its commercial performance targets at the time the Company announced the battery license. Opp. at 12. But when the challenged statements are taken "together and in context," *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004), no reasonable investor would arrive at Plaintiff's reading.

**Battery statements are forward looking.** Context is all the more important when evaluating if a statement is forward looking, because "[t]o differentiate 'historical observations,' which are not forward looking, from 'assumptions about future events,' which are forward looking," courts in this circuit "rely on the context in which the statement appears." *Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022). The Opposition ignores this principle.

For example, then-CEO Wiegand's statement that "[w]e have secured battery technology that allows us to achieve our launch range of 150 miles," Opp. at 2, 11, 12; Ex. 17 at 4, was made in the context of an investor presentation on March 30, 2021.[4] Both the slides and the transcript began with forward-looking statement disclaimers. Ex. 7 at 2, Ex. 17 at 1; *see also* MTD at 7. The battery technology slide references a "*projected* physical range," provides that 150 miles is a "*target* for entry into service," and notes that the source for those targets are "management estimates," as the "[b]attery cell technology [is] *still under development*" with the "design *not yet finalized*." Ex. 7 at 26. Other slides confirm the statements were projections about Lilium's eventual commercial 7-seater jet. *See id.* at 15 ("best *projected* unit economics"), 24 (picturing the jet as an "indicative rendering concept"), 13, 16, 20, 25, 27, 32-34 (slide sources are "management estimates"). Indeed, Lilium's then-CFO Richardson noted that "[w]ith the proceeds from this transaction, we're going to . . . finish the seven seater through design, into manufacturing certification." Ex. 17 at 6. Wiegand's *next sentence* explained that the battery technology "has been proven on our own test benches," not in a commercial aircraft. *Id.* at 4.[5]

---

[4] Plaintiff argues that Defendants cited battery statements not alleged in the Complaint. *See* Opp. 12 (referring to MTD at 7). But both the March 30 and June 15 investor presentations referenced in MTD at 7 are explicitly described in the Complaint. ¶¶ 175-76.
[5] Plaintiff does not contest that other challenged battery statements are forward-looking on their

**The safe harbor applies.** Plaintiff claims Lilium did not "disclose[] risks with specificity." Opp. at 13. Not so. MTD at 8 (battery), 10 (hover time), 10-11 (range). Far from hiding that the batteries "had not been sufficiently tested," Opp. at 14, the risk factors cautioned that, while "measurements of our battery supplier have already yielded promising results," "the final technology of our batteries and other sub-systems is still under development and the design is not yet finalized." Ex. 3 at 70 ("The final cell design of our suppliers may not be able to meet the safety, technological, economical or operational requirements to support the regulatory requirements and performance assumed in our business plan.").[6]

**The statements are protected opinions.** Plaintiff contends that the challenged battery statements are not protected opinions because Defendants' conclusions were "unreasonable." Opp. at 11. While deriding Defendant's citations to pharmaceutical cases—which also involve scientific debates and intense regulation—Plaintiff ignores their reasoning. The battery undisputedly showed promising results—above 330 Wh/kg capabilities. Defendants' interpretation of the results for eventual commercial flight is an opinion based on assumptions and calculations made public in the White Paper and other technical publications. Plaintiff's only response is to argue that those assumptions were "flawed and question [defendants'] studies based on its own studies and experts." *Einhorn*, 42 F.4th at 1231.[7] As in *Einhorn*, these are conclusory disagreements, not the basis for fraud.

### 2.       No False Statements regarding Hover Time

Plaintiff himself pleaded that the challenged statements regarding hover time were projections. MTD at 10 (citing ¶¶ 186-87). His Opposition now contends those statements

---

face. *See* ¶ 176 (". . . now converging on technology that **will** meet the safety and performance requirements"), ¶ 177 ( "we **will** be able to expand the range of the Lilium Jet to approximately 250km [115 miles] **at entry into service in 2024**") (emphasis added).

[6] Plaintiff cannot escape the application of the safe harbor by claiming that Defendants made forward-looking statements with actual knowledge they were false. MTD at 8-9. Plaintiff cites two cases—neither of which was a securities class action—for the uncontroversial point that pleading in the alternative is permitted. Opp. at 15.

[7] Nor does the alleged "omission" of Zenlabs as the battery supplier render the opinions actionable. Reasonable investors cannot "expect that every fact known to an issuer supports its opinion statement." *Einhorn*, 42 F.4th at 1231 (citation omitted); *see also Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) ("*Omnicare* does not impose liability merely because an issuer failed to disclose information that ran counter to an opinion expressed in the registration statement."). Plaintiff does not explain how unproven allegations against one individual affiliated with Zenlabs has any bearing on the company's battery technology. *Infra* at 7, 10, 13.

conveyed in "plain contemporaneous or historical terms" how long Lilium's commercial jet currently hovers. Opp. at 12. The Court need not countenance Plaintiff's attempt to "amend [his] Amended Complaint through statements contained in a brief." *Sims v. Chase Home Fin., LLC*, 2011 WL 13176725, at *5 n.5 (N.D. Ga. Aug. 30, 2011), *aff'd*, 471 F. App'x 877 (11th Cir. 2012). Besides, Plaintiff's reading is absurd: as Plaintiff admits, there was no commercial jet yet. ¶ 128 (Lilium did not have a functioning demonstrator at start of class period), ¶ 129 (demonstrator "had still not accomplished" crucial maneuvers as of end of class period).

Reading the hover statements in context confirms they were forward looking. McIntosh's technical blog describes a hypothetical "mission profile," Ex. 12, and makes clear that the hover time estimates are assumptions. ¶ 184 ("during take-off we are only hovering approximately ~10-25 seconds and *we also assume approximately ~20 seconds during a standard landing phase*). The hover time statements describe Defendants' plans for commercial flights. These too are inactionable where "Plaintiff does not allege that Defendants misrepresented their own statistical methodology, analysis, and conclusions." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 879 (9th Cir. 2012). Plaintiff is left only with subjective disagreements with those assumptions, Opp. at 11, which cannot support a claim. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191-92 (9th Cir. 2021) ("assumptions underlying" objective are protected).

### 3.      No False Statements regarding Range

Plaintiff does not dispute that the challenged range statements, ¶¶ 191-95, are forward looking. Opp. at 8 ("Lilium Jet **would** be capable of a range of 155+ miles"); ¶ 95 ( "Lilium Jet's potential range" based on assumptions). Plaintiff disagrees with underlying assumptions and argues the cautionary language was not meaningful. Opp. at 8, 13.

Challenges to the assumptions underlying projections do not plead a claim. MTD at 11; *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1280 (S.D. Fla. 2017) ("when the factors underlying a projection or economic forecast include both assumptions and statements of known fact, and a plaintiff alleges that a material factor is missing, the entire list of factors is treated as a forward looking statement."). The Opposition offers no response. Nor can Plaintiff escape that Lilium warned that its "**forecasted performance model targets** in terms of aircraft range" was based on "our current testing and projections," not current capabilities, because "our Lilium jet is not yet fully operational." Ex. 3 at 63, 190 ("Supplier and in-house measurements of the pouch cells have yielded nominal energy density levels of 330 watt-hour per kilogram, which is

**projected** to enable a physical aircraft range of 155 miles (our **target for entry into service**)").[8]

Plaintiff's selective reading of one of multiple relevant risk factors, Opp. at 13-14, cannot dislodge the challenged statements from their forward-looking posture.

### 4. No False Statements regarding Timeline to Certification

Plaintiff challenges statements regarding Lilium's timeline based on regulatory uncertainty and CW1's opinion that the timeline would be difficult. Opp. 9. But the Opposition offers no response to blackletter law that projected timelines are aspirational and forward-looking, or any attempt to distinguish Defendant's authority. *See* MTD at 12-13. Nor does Plaintiff contest that CW1's opinions cannot establish falsity. *See id.* at 11.

Plaintiff is left with an argument that the risk factors somehow "double[d]-down" on misrepresentations. Opp. at 14. Plaintiff does not explain how a warning that "we do not expect to launch commercial services until 2024, at the earliest, if at all" does anything except put investors on notice that the timeline is aspirational. Nor does Plaintiff explain how the opinion "[b]ased on our current testing and projections, we believe that we can achieve our business plan and forecasted performance model targets," *id.*, somehow establishes falsity.

### C. Plaintiff's Scienter Allegations Fail to Plead Any Defendant's State of Mind

Without even attempting to engage with Defendants' arguments, Plaintiff surmises that either (1) he has pleaded actual knowledge; or (2) the court should infer scienter based on a "red flags" theory and generalized allegations of motive and opportunity. Both arguments fail.

### 1. Plaintiff Fails to Allege Actual Knowledge

Plaintiff provides a laundry list alleging Defendants' knowledge, but each example is conclusory, discounted by relevant disclosures, or consistent with Defendants' representations.

**Regulatory Guidelines.** Plaintiff argues that Defendants must have "had actual

---

[8] Plaintiff's authority, Opp. at 13-14, is inapposite. *See Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85-86 (2d Cir. 2021) (warnings that volatility spike "could" or "may" impact prices insufficient where decade of volatility confirmed price impact "virtually certain"; warning of potential conflict of interest insufficient where notes were structured for bank to "profit at its own investor's expense"); *Pritchard v. Apyx Med. Corp.*, 2020 WL 1180731, at *5, 7 (M.D. Fla. Mar. 11, 2020) (warning of potential failure insufficient when study already failed to meet primary endpoints). The risk factors here were explicit in that the commercial jet, including its battery systems, had not yet been finalized, and that its range projections were based on testing and assumptions that "may prove inaccurate." *E.g.*, Ex. 3 at 63-65. And unlike in Plaintiff's cases, which involved materialized harms (i.e., collapse of an investment note and unsuccessful clinical trial), Plaintiff here can identify no such failure.

knowledge that there was no basis to move the commercialization timeline up" given regulatory uncertainty. Opp. at 14. Even without final regulations, Defendants needed working assumptions to conduct Lilium's business. Those assumptions were disclosed. Ex. 8 at 26 (noting timeline "[i]ndicative, until EASA & FAA final rules for MoCs and Level of involvement are known: Lilium does not control regulatory timelines"); Ex. 7 at 32. The bases for the Company's expectations—including exchanges with regulatory authorities, preliminary guidelines, and instructions from the EASA during certification progression—were also disclosed. *See, e.g.,* Ex. 3 at 184 (regulator engagement since 2017), 193, 197 (EASA guidelines and updated requirements); Ex. 15 at 8 (discussing insights gleaned from EASA's issuance of G-1 certification for Jet). To apply Plaintiff's logic, no company would be allowed to have working expectations of regulatory actions, lest it fear a securities fraud lawsuit.

That is not the law: "[c]ompanies have no obligation under 10b-5 to predict accurately future regulatory action." *Carvelli v. Ocwen Fin. Corp.*, 2018 WL 4941110, at *7 (S.D. Fla. Apr. 30, 2018), *aff'd*, 934 F.3d 1307 (11th Cir. 2019). Defendants made clear that their predictions were uncertain and that the agencies' certification guidelines were still in development. *See, e.g.,* Ex. 3 at 114 ("Although Lilium's management believes such assumptions to be reasonable . . . no eVTOL aircraft have yet passed certification by EASA or the FAA").

Likewise, Plaintiff asserts that Defendants knew their "progress toward EASA certification had only just begun" and the longest phase was "years away." Opp. at 15. Even assuming that progress "had only just begun," this is not incompatible with Defendants' timeline.

**Batteries.** Plaintiff claims that Defendants "knew" that batteries capable of powering the Jet were "at least 7-8 years from availability." *Id.* at 14-15. Plaintiff is saying that because *he* thinks the batteries are 7-8 years away, then Defendants must have thought so too. It is also unclear how Defendants could have "actual knowledge" that the batteries were years away from commercialization when it was impossible to know with certainty when such technology would become broadly available. Lilium's own expectations are that the technology would be available on a proprietary basis on a timeline consistent with the Jet's commercial launch.

Plaintiff also claims Defendants knew that the CEO of the third-party battery provider had previously been accused of misrepresenting battery capacities at a different company. *Id.* Unadjudicated allegations from another lawsuit cannot be used to infer scienter. *See Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, at *5 (N.D. Cal.

May 24, 2023) (striking under Rule 11 allegations based on pleadings in separate proceeding).

**Prototype Construction.** Plaintiff claims that Defendants knew they had yet to begin construction of their full-scale prototype, that their demonstrator had caught fire, and that they had yet to achieve transition from hover to forward flight. Opp. at 15. But this is all information that Lilium timely disclosed. Ex. 3 at 66 (noting fire), 182 (prototypes built to date); Ex. 18 at 4 (plans to test transition to horizontal flight). This information cannot be used to infer scienter. *City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, 2023 WL 27154, at *3 (S.D. Fla. Jan. 3, 2023) (no inference of scienter from disclosed results).

**Employee Opinions.** Citing a *Forbes* article and the anonymous testimony of CW1, Plaintiff notes that (1) "at least four Lilium employees . . . left Lilium over concerns about the unrealistic timeline," (2) "CW1 personally communicated his concerns about the timeline to Defendant Yemsi," and (3) "Yemsi's own projections [] showed that certification in 2023 would be 'extremely difficult.'" Opp. at 15. It is unclear how a handful of departing employees constitutes "actual knowledge" of the feasibility of the Jet's timeline. Differences of opinion are natural and frequent, and in any event, the fact that hundreds of employees *stayed* at Lilium cuts against Plaintiff's suggestion that the opinions of the former employees were universally held. And putting aside his reliance on a second-hand report based on anonymous allegations, Plaintiff *himself* quotes one of the employees as saying that, while they disagreed with Lilium's expected certification timeline, "I'm not saying Lilium is guilty of investor fraud[.]" ¶ 133. Moreover, Plaintiff implies that CW1's difference of opinion was particularly significant because CW1 was "[f]ar from [being] a junior employee." Opp. at 6. Yet Plaintiff fails to provide any evidence to support this assertion (as is his burden), and in any event, all signs point to the contrary—CW1 had no direct reports and was employed at Lilium for only a year. Ex. 19. Plaintiff likewise falsely asserts that CW1 "personally communicated" his doubts to Defendant Yemsi, Opp. at 15, but fails to identify any details about the time, place, or contents of that supposed meeting. *See* ¶¶ 217, 280, 287; *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006) (CW allegations lacked "requisite particularity" because complaint "failed to allege what was said at the meeting, to whom it was said, or in what context"); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008) (same). Nor does describing a task as "difficult" mean Defendants knew it was infeasible. Lilium's disclosures clearly stated that the *earliest* commercialization could be achieved, *if at all*, was 2024. Ex. 3 at 40, 63.

-8-

**Core Operations.** Plaintiff claims that Wiegand was "'intimately involved' in the Jet's development." Opp. at 15. But Plaintiff never alleges any particularized facts about what Wiegand knew, and patently mischaracterizes the core operations theory—a quintessential example of generalized, *circumstantial* pleading—as "actual knowledge." *See Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1057 (N.D. Cal. 2020) ("Plaintiffs do not allege that [defendants] acted with actual knowledge" but "[i]nstead, they invoke the core operations doctrine").

### 2.       Plaintiff's Allegations are Insufficient to Infer Scienter

Plaintiff next argues that the Court can *infer* scienter from "numerous red flags," Opp. at 16, that Defendants purportedly ignored, coupled with generalized allegations of motive and opportunity. These theories fall short of showing "severe recklessness." MTD at 16-17.

Plaintiff fails to allege "red flags" under the theory's rigorous standard. *See Reiter v. Fairbank*, 2016 WL 6081823, at *13 (Del. Ch. Oct. 18, 2016) ("[T]he allegations of the Complaint plead at most flags of a different hue, namely yellow flags of caution" which are insufficient to infer scienter).[9] As in the cases Defendants cited, MTD at 17, courts decline to infer scienter on the basis of alleged red flags far graver than the ones at issue here.

Plaintiff further argues that his generalized allegations of motive and opportunity (which he concedes are insufficient "standing alone") can be "examined collectively" with other evidence to support an inference of scienter. Opp. at 17. But given that Plaintiff provides only "speculation and conclusory allegations," the whole is not greater than its parts. *Durgin v. Mon*, 415 F. App'x 161, 165 (11th Cir. 2011) (no inference of scienter because claims "rest[ed] solely on speculation and conclusory allegations."); *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253, 1283 (M.D. Fla. 2009), *aff'd,* 594 F.3d 783 (11th Cir. 2010) ("None of these allegations, considered separately or in aggregate, supports a strong inference").

Any semblance of improper motive is undercut by the fact that Defendants (in addition to other Lilium directors and longstanding investors) invested in Lilium's latest round of financing of $292 million. Ex. 14 at 1; Ex. 15 at 2, 4. Such continued investing negates scienter. *See Davidoff v. Farina,* 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (no inference of scienter because "it would have made no economic sense for defendants to invest literally

---

[9] Plaintiff argues "dozens of securities cases in this circuit discuss red flags." Opp. at 16 n.9. The "red flags" theory is rooted in Delaware corporate governance law (not federal securities law). The few times a "red flags" theory is applied in securities cases within the Eleventh Circuit, it is in the context of alerting officers of accounting violations.

billions of dollars in a venture that they knew would fail").

### D.      Plaintiff Fails to Plead Loss Causation

Plaintiff raises three arguments with respect to loss causation, all of which fail.

**Plaintiff Misstates the Pleading Standard.** Plaintiff incorrectly claims that all his allegations need to do is give "fair notice" to Defendants. Opp. at 17 (citing *Dura Pharm., Inc. v. Broudo*, 544. U.S. 336, 338 (2005)). But *Dura* predates the Supreme Court's ruling in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which abandoned notice pleading in favor of a plausibility standard. In addition, because Plaintiff seeks to plead fraud, his loss causation allegations must be particularized. MTD at 21. In reality, Plaintiff's allegations are both conclusory and implausible.

**Iceberg Report Is Not a Corrective Disclosure.** First, Plaintiff argues that a short-seller report can be a corrective disclosure. Opp. at 18. That is beside the point. As the Eleventh Circuit noted, "the mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure." MTD at 7, 19 (quoting *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013)). Plaintiff relies on an unpublished ruling of no precedential value. Opp. at 17 (citing *Luczak v. Nat'l Bev. Corp.*, 812 F. App'x 915, 920 (11th Cir. 2020)). *Luczak* did not involve a short-seller report, but a public statement by the SEC, concluding that defendant "made inconsistent statements regarding particular performance metrics." *In re MiMedx Grp. Inc.*, 2021 WL 7210372, at *4 n.4 (N.D. Ga. Mar. 25, 2021) (dismissing for failure to plead loss causation). In *MiMedx*, the court declined to follow *Luczak*, noting that "*Luczak* is somewhat inconsistent with the holding in *Meyer*." *Id.* It held that "*Luczak* is not binding on this Court, but this Court is bound by the Eleventh Circuit's decision in *Meyer*." Weeks ago, the Eleventh Circuit affirmed *MiMedx*'s dismissal, in a published and binding ruling. *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023).

Plaintiff's Opposition points only to four pieces of information he claims the Iceberg report revealed to the market. Opp. at 18-19. According to Plaintiff, Iceberg revealed for the first time that Zenlabs was the source of Lilium's batteries. *Id.* Plaintiff only alleges that Zenlabs' CEO was once sued in a lawsuit that ultimately settled. *Supra* at 7. But that is not a corrective disclosure: Lilium had not claimed a different battery supplier, and it certainly had no duty to disclose the identity of its suppliers. Plaintiff further claims that Iceberg revealed that Lilium's CEO alma mater allegedly "did not want any association with Lilium," but why that matters is unclear, since many CEOs attend schools that are not associated with the companies they found.

Plaintiff's claim, as usual, stretches the truth: the CEO's alma mater did not take any position; it was just one professor who thought the CEO's design would not fly. *Lilium NV - The Losing Horse in the eVTOL Race*, Iceberg Research (Mar. 14, 2022), https://shorturl.at/RVX34. It rather obviously does, and it is not the first time a professor is wrong about a student's idea. That is not securities fraud. The rest of the "news" Plaintiff attributes to the Iceberg report are not facts, but Iceberg's speculation about what regulators might do and on what timeline. Opp. at 19.

**Plaintiff Fails Plead a Plausible Cause of the Stock Drop.** Second, Plaintiff argues that it should not be required to disaggregate the various potential causes of the stock drop. Opp. at 19. Once again, Plaintiff misses the point. Simply stating, in conclusory terms, that the market must have reacted to the Iceberg report does not meet his pleading burden. Particularity and plausibility are needed. As alleged in the same article on which Plaintiff bases his allegations, earlier the same day, "[t]he stock was down **before** the Iceberg Research report came out." MTD at 19. This was due to nearly *200 million* shares becoming freely tradeable the same day. *Id.* It is vastly more plausible that the market's reaction was due to the influx of new shares, rather than to Iceberg's repackaging of old news. Further confirming this dynamic, when Iceberg issued a follow-on report a few months later, the price did not move at all, despite similar purported "revelations." *Id.*[10] Plaintiff has failed to plead loss causation.

## II. PLAINTIFF FAILS TO PLEAD SCHEME LIABILITY

Plaintiff claims that he may plead scheme liability based solely on his pre-existing allegations regarding Defendants' purported misstatements. Opp. at 20. He invokes *Lorenzo* to assert that scheme liability need not exist independently of a misrepresentation or omission claim. Opp. at 20. *Lorenzo* never says that. In *Lorenzo v. SEC*, the Court considered an entirely separate question: whether a party that does not actually "make" the alleged misrepresentations can nonetheless be liable for disseminating them. 139 S. Ct. 1094, 1100 (2019). The answer is obviously "yes." *Id.* But Plaintiff merely repackages his deficient misrepresentation allegations as a "scheme." Courts have expressly warned against attempts to repurpose *Lorenzo* in this way:

> An overreading of *Lorenzo* might allow private litigants to repackage their misstatement claims as scheme liability claims to "evade the pleading requirements imposed in misrepresentation cases." But courts have prohibited plaintiffs from recasting their pleadings in this way. "A plaintiff may not seek to

---

[10] Plaintiff's authorities, Opp. at 19 & n.12, are inapposite. They did not involve short-seller reports, and discussed disaggregation in the context of the truth entering the market gradually. All those cases involved plausible allegations of corrective disclosures, unlike here.

> hold a defendant liable for misleading statements under subsections (a) and (c) by alleging that the defendant is liable for the misleading statements because he or she was a participant in a scheme through which the statements were made."

*SEC v. Rio Tinto PLC*, 41 F.4th 47, 55 (2d Cir. 2022) (cleaned up).

Plaintiff cites three inapposite cases to support his flawed interpretation of *Lorenzo*. Opp. at 20. The first case is an SEC enforcement action involving fraudulent promissory notes, not shares of a public company. *SEC v. Complete Bus. Sols. Grp.*, 538 F. Supp. 3d 1309 (S.D. Fla. 2021). Defendants had recruited other individuals to sell fraudulent notes, *id.* at 1318, engaged in a "coordinated effort" to set up a new fund model to evade detection following regulatory sanctions, *id.* at 1340, and claimed that one of the defendants was a seasoned businessman when, in reality, he was a twice-convicted felon, formerly imprisoned, who had been ordered to pay over $14 million for larceny and money laundering, *id.* at 1319.

The second case, *Happy Tax Franchising v. Hill*, is equally inapposite. 2023 WL 418820 (S.D. Fla. Jan. 5, 2023). Contrary to Plaintiff's assertion, the court did not say that Rule 10b-5(b) allegations could be recycled as viable scheme liability claims. It simply acknowledged that scheme liability and the act of making misrepresentations are not mutually exclusive, *id.* at *11, as most schemes may entail misrepresentation in some form. The case dealt solely with claims against a third-party defendant who purported to be a qualified independent auditor and falsely verified corporate financial statements. *Id.* at *2. The court *declined* to find scheme liability because the so-called auditor did not constitute an issuer and thus could not be said to have been motivated by the intent to defraud investors. *Id.* at *7, 12. Similarly, Plaintiff's third case does not state that Rule 10b-5(b) allegations can be repackaged for purposes of scheme liability; it simply rejects the idea that "Rule 10b-5(a) and (c) . . . are violated *only* when conduct other than misstatements is involved." *In re Alphabet Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).

Knowing his analysis of *Lorenzo* is flawed, Plaintiff invokes "conduct" distinct from his misrepresentation claims. These allegations are unavailing. First, they fail to constitute knowing misconduct, as is required for scheme liability. *Home Depot*, 544 F.3d at 1238 (scheme liability requires showing of scienter); *Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1209 (S.D. Fla. 2015). Second, they are wholly duplicative of Plaintiff's Rule 10b-5(b) allegations. *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 858 (11th Cir. 2016) (dismissing claim where plaintiff alleges no "conduct beyond" misrepresentations).

Plaintiff begins by claiming that Defendant Wiegand "attempted to utilize his university"

-12-

to "misleadingly . . . polish [Lilium's] image" and "attract investors." Opp. at 21. Plaintiff fails to explain how such conduct is "misleading" or different from typical business activity. *In re EHang Holdings Ltd. Sec. Litig.*, 2022 WL 17718546, at *9 (S.D.N.Y. Dec. 15, 2022) ("pleading generalized business motives, 'such as the desire for the corporation to appear profitable' is not enough."); *Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*, 2009 WL 4730315, at *8 (N.D. Ga. Dec. 4, 2009) ("Generalized allegations of intent to maintain lucrative business relationships and to establish new ones do not set forth a motive for [state of mind] purposes."). Plaintiff is also simply wrong in claiming that the Technical University of Munich ("TUM") "wanted no association with the Company." Opp. at 3. TUM published an article calling Defendant Wiegand a "pioneer" in March 2019—that article is still active on TUM's website. *Air taxi pioneer Daniel Wiegand,* TUM Community (Mar. 18, 2019), https://shorturl.at/sFJW1. TUM also invited him to speak at a conference regarding the future of aviation in May 2023—TUM's recap of the event noted that Lilium is a "TUM-spin-off" and included a picture of Defendant Wiegand with a TUM professor. *Drones and air cabs: What the aviation revolution needs*, TUM News (Oct. 5, 2023), https://shorturl.at/fkX47; *TUM Entrepreneurship Day,* TUM (Jun. 30, 2022),* https://shorturl.at/oxX69.

Next, Plaintiff claims that Defendants "commissioned" and "disseminated" the White Paper to falsely suggest the viability of the Jet's design. Opp. at 21. This allegation is not distinct from the misrepresentation claim. ¶ 85. Plaintiff fails to plead any nefarious conduct. Companies support research often—that is not a scheme to defraud. MTD at 11; *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013) ("where a defendant's competing analysis or interpretation of data is itself reasonable, there is no false statement."); *Tesla, Inc.*, 985 F.3d at 1192.

Finally, Plaintiff alleges that Defendants concealed Lilium's partnership with Zenlabs. Opp. at 21. That is entirely duplicative of Plaintiff's "omissions" claims. Regardless, Defendants had no obligation to disclose this proprietary information. MTD at 21; *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 459 (S.D.N.Y. 2019) ("the protection of proprietary information is the quintessence of a 'generalized' business motive"); *see also supra* at 7, 10.

## III.    PLAINTIFF ALSO FAILS TO STATE A CLAIM UNDER SECTION 14(a)

Failing to engage with Defendants' arguments regarding Section 14(a), MTD at 21-23, the Opposition simply restates the Complaint's deficient allegations, without citing any authority. As discussed above, Qell's Proxy did not suffer from any material misrepresentations or

omissions. *Supra* at I.B. Plaintiff does not fare any better with respect to the remaining elements of his Section 14(a) claim: scienter and essential link to the alleged harm. MTD at 21-23.

A.       **Given that His Claims Sound in Fraud, Plaintiff Fails to Plead Scienter**

Plaintiff does not even attempt to argue that its flimsy Section 14(a) allegations meet the requirement for pleading fraud. *See* MTD at 21-22. Plaintiff simply claims that "the complaint identifies clearly an alternate basis, i.e., negligence, for the [Section 14(a)] claim." Opp. at 21. Plaintiff's "alternate basis" amounts to a single sentence alleging that "[e]ach Defendant named in this Count acted *at least negligently*." ¶ 368. While Plaintiff is free to engage in alternative pleading, "it [is not] enough to present a general disclaimer . . . to immunize the nonfraud claims from the Rule 9 requirements." *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (same). Plaintiff's "general disclaimer" does not change the fact that his Section 14(a) claim relies on the same allegations as those of his fraud claim. *See Lee v. Frost,* 2021 WL 3912651, at *4 n.3 (S.D. Fla. Sept. 1, 2021) ("[W]hen plaintiffs assert Section 14(a) claims grounded in alleged fraudulent conduct, they are subject to heightened pleading requirements, even if they disclaim reliance on a fraud theory") (citations omitted).[11]

Even if his Section 14(a) claim did not sound in fraud, Plaintiff is required to plead negligence with particularity. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000); *Frost*, 2021 WL 3912651, at *4 n.3.[12] Plaintiff's own cases confirm the burden is on Plaintiff to "plead with particularity facts that give rise to a strong inference of negligence." *Harmonic,* 152 F. App'x at 683; *McKesson*, 126 F. Supp. 2d at 1267.

Plaintiff fails to show that Defendants acted negligently because Plaintiff does not establish careless conduct. The research conduct, the regulatory approvals obtained, the test

---

[11] Plaintiff's own authority, Opp. at 22, is not only distinguishable, but supports Defendants' argument. *See Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005) (dismissing Section 14(a) claim for failure to plead that defendants knew their opinion statements were false when made); *Wilson v. Great An. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988) (concluding that defendants had actual knowledge, i.e., "a culpable state of mind far in excess of negligence," before reaching Section 14(a) claim); *Gould v. Am.-Haw. S.S. Co.*, 535 F.2d 761, 777 (3d Cir. 1976) (rejecting defendant's argument that heightened pleading standard should be applied to outside directors due to their diminished proximity to defendant company).

[12] *Accord Little Gem Life Scis. LLC v. Orphan Med., Inc.*, 537 F.3d 913 (8th Cir. 2008); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 n.8 (3d Cir. 2004); *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003), *aff'd*, 87 F. App'x 772 (2d Cir. 2004); *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518 (S.D.N.Y. 2021).

flights cleared, all point to the opposite conclusion. *See* MTD Section I.A.

**B.      Plaintiff Still Fails to Plead the Proxy Was an "Essential Link" to Any Harm**

As Defendants showed, MTD at 23, "[t]he transaction at issue must be the source of the plaintiff's injury." *Jabil*, 594 F.3d at 796-97. "The losses . . . must have resulted directly from the . . . Proxy Statement vote, not from the omission itself." *McDowell v. Bracken*, 317 F. Supp. 3d 1162, 1180 (S.D. Fla. 2018). Plaintiff fails to address that the de-SPAC was not related to his alleged loss.[13] As the Proxy clearly stated in bold, **"Public shareholders may elect to redeem their shares even if they vote for the Business Combination Proposal."** Ex. 1 (letter portion) at 4, 10; *see also id.* 211-12. Plaintiff had the right to redeem (i.e., get his money back) even if the de-SPAC vote was successful, and thus "fails to allege a link between the proxy solicitation and the shareholders' loss." *Jabil*, 594 F.3d at 797. Plaintiff's Section 14(a) claim fails as well.

**IV.      PLAINTIFF ALSO FAILS TO STATE A SECURITIES ACT CLAIM**

As with his Section 14(a) claim, Plaintiff asserts that "Rule 9(b) does not apply" because Plaintiff "carefully disclaim[ed] any fraud allegations at the outset of its . . . claims." Opp. at 24. Plaintiff is wrong for the same reasons stated above. *Supra* at III.A; *Chang*, 355 F.3d at 171; *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

Plaintiff does not contest, and thus concedes, that his Securities Act claims are based on the same alleged misstatements as are his Exchange Act claims, and fails to provide a different narrative as to why they are false. *See* Opp. at 24-25; MTD at 24.[14] Indeed, the Opposition relegates its discussion of alleged misstatements and omissions to Section 10(b), Opp. at 7-9, and does not contest its failure to allege any actionable misstatement under Section 11 under any standard. *See* MTD 24-45; Opp. at 24-25. That alone is fatal to Plaintiff's Securities Act claims.

**CONCLUSION**

Defendants respectfully request that the Court dismiss this action with prejudice.

---

[13] Plaintiff's out-of-circuit authorities fail to address Defendants' argument. In *In re Envision Healthcare Corp.*, 2019 WL 3494407 (D. Del. Aug. 1, 2019), the Proxy in question caused Plaintiffs to sell their company for a price lower than it would have otherwise been without the misleading Proxy. In *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 757 F. Supp. 260 (S.D.N.Y. 2010), the proxy solicited approval of Bank of America's acquisition of Merrill. Once the merger closed, shareholders of Bank of America stock had no option to avoid the loss.

[14] Plaintiff asks the Court to disregard Defendants' Section 12(a)(2) arguments. Opp. at 24 n.19. Unlike the cases Plaintiff cites in support, in which substantive arguments and responses were raised in footnotes, Defendants here explained why the above-the-line arguments applied equally to Sections 11 and 12(a)(2). MTD at 23 n.8.

Date: August 11, 2023

Respectfully submitted,

*/s/ Bradley S. Shraiberg*
Bradley S. Shraiberg (Fla. Bar No. 121622)
Patrick Dorsey (Fla. Bar No. 0085841)
**SHRAIBERG PAGE P.A.**
2385 NW Executive Center Dr Ste 300
Boca Raton, FL 33431-8530
(561) 443-0800
bss@slp.law
pdorsey@slp.law

Boris Feldman
Doru Gavril
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
855 Main Street
Redwood City, CA
(650) 618-9250
boris.feldman@freshfields.com
doru.gavril@freshfields.com

Adam Rosenfeld
Susannah Benjamin
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Ave
New York, NY 10022
(212) 277-4000
adam.rosenfeld@freshfields.com
susannah.benjamin@freshfields.com

*Attorneys for Defendants*

-16-

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request oral argument on their Motion to Dismiss the Amended Complaint, not to exceed one hour per side. The Amended Complaint and Defendants' Motion to Dismiss involve significant issues of the federal securities laws. Uniform application of the federal securities laws is a key driver of the U.S. capital markets and one of the primary goals that Congress has identified. *See, e.g.*, S. Rep. No. 105-144, S12444, S12446 (1998). Oral argument is likely to assist the Court in reaching a full understanding of the issues and principles involved.


**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on 11th day of August 2023.


　　　　　　　　　　　　　　 */s/ Bradley S. Shraiberg*
　　　　　　　　　　　　　　 Bradley S. Shraiberg