**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-80232-ROSENBERG/REINHART**

MANIRAJ ASHIRWAD GNANARAJ,
Individually and on Behalf of All Others
Similarly Situated,

                Plaintiffs,

                -v.-

LILIUM N.V. F/K/A QELL ACQUISITION
CORP. *et al.*,

                Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS THE SECOND AMENDED COMPLAINT**

<table>
<tr><td>

**SHRAIBERG PAGE P.A.**

Bradley S. Shraiberg
Florida Bar No. 121622
Patrick Dorsey
Fla Bar No. 0085841
2385 NW Executive Center Dr Ste 300
Boca Raton, FL 33431-8530
Telephone: (561) 443-0800
Email: bss@slp.law
      pdorsey@slp.law

</td><td>

**FRESHFIELDS BRUCKHAUS DERINGER
US LLP**

Boris Feldman
Doru Gavril
855 Main Street
Redwood City, CA
Telephone: (650) 618-9250
Email: boris.feldman@freshfields.com
      doru.gavril@freshfields.com

Adam Rosenfeld
Susannah Benjamin
601 Lexington Ave
New York, NY 10022
Telephone: (212) 277-4000
Email: adam.rosenfeld@freshfields.com
      susannah.benjamin@freshfields.com

</td></tr>
</table>

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ……………………………………………………… 1

ARGUMENT ……………………………………………………………………… 1

I. THE SAC FAILED TO FIX THE ORIGINAL COMPLAINT'S FAILURES ……………… 1

    A. The SAC Should Again Be Dismissed for Puzzle Pleading ……………………………… 1

    B. The Opposition Confirms the SAC's Intrinsic Flaws ……………………………………… 2

II. PLAINTIFF DOES NOT STATE A FRAUD CLAIM UNDER SECTION 10(b) …………….. 2

    A. Plaintiff Again Fails to Identify Any Actionable Statement or Omission ………………… 2

        1. No False Statements Regarding Batteries, Hover, Range, or Timeline …………… 3

        2. Many Challenged Statements Remain Inactionable Opinions …………………… 4

    B. Plaintiff's Scienter Allegations Fail to Plead Any Defendant's State of Mind ………….. 5

        1. Plaintiff Fails to Allege Actual Knowledge ………………………………………… 5

        2. Plaintiff's Allegations Are Insufficient to Infer Scienter ………………………… 7

    C. Plaintiff Fails to Plead Loss Causation ……………………………………………………… 9

III. PLAINTIFF FAILS TO PLEAD SCHEME LIABILITY ………………………………… 9

IV. PLAINTIFF ALSO FAILS TO STATE A CLAIM UNDER SECTION 14(a) ……………… 10

V. PLAINTIFF ALSO FAILS TO STATE A SECURITIES ACT CLAIM ……………………… 10

CONCLUSION ……………………………………………………………………... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*In re Alphabet Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) …………………………………………………..……… 9

*Carvelli v. Ocwen Fin. Corp.*,
    2018 WL 4941110 (S.D. Fla. Apr. 30, 2018), *aff'd*, 934 F.3d 1307 (11th Cir. 2019) …..…… 6

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
    2023 WL 27154 (S.D. Fla. Jan. 3, 2023) ………..……………………………….…… 6

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*
    806 F. Supp. 2d 1267 (N.D. Ga. 2011) ……………………………………..……..… 2

*In re Danimer Sci., Inc. Sec. Litig.*,
    2023 WL 6385642 (E.D.N.Y. Sept. 30, 2023) …………………………………..…….. 8

*Davidoff v. Farina*,
    2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) …………………..………….…....…..…..…… 9

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
    595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010) …………… 8

*Einhorn v. Axogen, Inc.*,
    42 F.4th 1218 (11th Cir. 2022) …………………………………………………..…… 3, 5

*Ford v. Voxx Int'l Corp.*,
    2016 WL 3982466 (E.D.N.Y. July 22, 2016) ………………………………………… 5

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ……………………………………………………..… 7

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) …………………………………………………….… 6, 7

*Happy Tax Franchising v. Hill*,
    2023 WL 418820 (S.D. Fla. Jan. 5, 2023) …………………………………………… 9

*Hattaway v. Apyx Med. Corp.*,
    2023 WL 4030465 (M.D. Fla. June 15, 2023) …………………………………..……… 2

*Henningsen v. ADT Corp.*,
    161 F. Supp. 3d 1161 (S.D. Fla. 2015) …………………………………..……… 10

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
    660 F. App'x 850 (11th Cir. 2016) …………………..……………………………….. 10

| **Cases** | **Page** |
|---|---|

*Inchen Huang v. Higgins*,
    443 F. Supp. 3d 1031 (N.D. Cal. 2020) ……………………………………………….. 7

*Jones v. Bank of Am.*,
    564 F. App'x 432 (11th Cir. 2014) …………………………………...………………. 2

*Kleinman v. Elan Corp.*,
    706 F.3d 145 (2d Cir. 2013) ……………………………………………………… 7

*In re KLX, Inc. Sec. Litig.*,
    232 F. Supp. 3d 1269 (S.D. Fla. 2017) …………………………………………… 5

*Lee v. Frost*,
    2021 WL 3912651 (S.D. Fla. Sept. 1, 2021) ……………………………………. 10

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012) ………………………………………………….. 8

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) …………………………………………………...……………. 9

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024) …………………………………………...…………………. 3

*Martin v. Quartermain*,
    732 F. App'x 37, 40 n.1 (2d Cir. 2018) ………………………………………….. 5

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ..………………………………………………… 9

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ………………………………………………... 8, 10

*Murdeshwar v. Search Media Holdings Ltd.*,
    2011 WL 7704347 (S.D. Fla. Aug. 8, 2011) …………………………………….. 8

*In re Pegasus Wireless Corp. Sec. Litig.*,
    657 F. Supp. 2d 1320 (S.D. Fla. 2009) …………………………………………… 8

*Pehlivanian v. China Gerui Advanced Materials Grp.*,
    2016 WL 2859622 (S.D.N.Y. May 16, 2016) …………………………………… 3

*In re Philip Morris Int'l Inc.*,
    89 F.4th 408 (2d Cir. 2023) ……………………………………….……………... 5

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
    2023 WL 4418886 (N.D. Cal. May 24, 2023) …………………………………… 6

**Cases**                                                                                                  **Page**

*Reiter v. Fairbank,*
   2016 WL 6081823 (Del. Ch. Oct. 18, 2016) ....................................................... 7

*Rombach v. Chang,*
   355 F.3d 164 (2d Cir. 2004) ....................................................................... 3

*Rosky v. Farha,*
   2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ................................................. 8

*SEC v. Complete Bus. Sols. Grp.,*
   538 F. Supp. 3d 1309 (S.D. Fla. 2021) ......................................................... 9

*SEC v. Kokorich,*
   663 F. Supp. 3d 63 (D.D.C. 2023) ............................................................... 8

*SEC v. Rio Tinto PLC,*
   41 F.4th 47 (2d Cir. 2022) ......................................................................... 9

*In Re Stable Rd. Acquisition Corp.,*
   2022 WL 2762213 (C.D. Cal. July 13, 2022) ................................................. 8

*In re Tesla Sec. Litig.,*
   477 F. Supp. 3d 903 (N.D. Cal. 2020) .......................................................... 3

*Tung v. Bristol-Myers Squibb Co.,*
   412 F. Supp. 3d 453 (S.D.N.Y. 2019) .......................................................... 8

*Wagner v. First Horizon Pharm. Corp.,*
   464 F.3d 1273 (11th Cir. 2006) ................................................................. 10

*Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.,*
   2009 WL 4730315 (N.D. Ga. Dec. 4, 2009) ................................................. 10

**Statutes**

   15 U.S.C. § 78u-4(b)(1) ........................................................................... 2

## TABLE OF ABBREVIATIONS[1]

| ¶ | Paragraphs of the Second Amended Complaint |
|---|---|
| Ex. | Exhibits to the First and Second Declarations of Doru Gavril, ECF Nos. 90, 98 |
| ECF | Docket entries from *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. Feb. 13, 2023) |
| First MTD | Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint, *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. May 12, 2023), ECF No. 89 |
| MTD | Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint, *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. Mar. 11, 2024), ECF No. 114 |
| Opp. | Memorandum in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, *Gnanaraj v. Lilium N.V.*, Docket No. 9:23-cv-80232 (S.D. Fla. Apr. 25, 2024 ), ECF No. 115 |
| R&R | Report and Recommendation to Grant Defendants' Motion to Dismiss, ECF No. 105 |
| SAC | Plaintiffs' Second Amended Complaint, ECF No. 110 |

---

[1] Emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphasis have been omitted.

## PRELIMINARY STATEMENT

Cosmetic edits aside, the latest complaint is a faithful duplicate of the prior one. Plaintiff has added no substantive allegations, doubling down on the same deficient claims. Plaintiff's central allegation remains securities fraud, but he comes nowhere close to the heightened pleading standard required not just by Rule 9(b), but also by the PSLRA.

First, Plaintiff **cannot plead a material false statement or omission**. He claims that Lilium had guaranteed that its aircraft would be commercialized in 2024. But when Lilium merged with the company that took it public, Lilium made clear that it was at the prototype stage, that European and US regulators were still working on certification criteria, and that key technologies, such as batteries, were in development. Since then, Lilium has made considerable progress: its prototypes have successfully completed dozens of critical testing milestones, and its first manned aircraft is about to launch. Regulators have still not finalized certification criteria.

Second, Plaintiff **cannot plead fraudulent intent**. It would be absurd: the company's executives and board members have invested their own money in the company, including in the most recent round of fund-raising. Why they would defraud themselves is left unexplained.

Finally, Plaintiff **cannot connect the alleged fraud to any actual loss**. The stock price drop of which Plaintiff complains coincided with a large number of shares entering the market at the same time. No analysts have shared Plaintiff's suspicions of fraud.

Plaintiff's complaint can be summarized as a very extended quibble with Lilium's design choices, regulatory strategy, and scientific judgments and assumptions. Plaintiff's disagreements are not enough to plead fraud; otherwise every Monday-morning quarterback would be able to plead a securities case. His other backup claims fare no better, as they share elements and allegations with the central fraud claim. The complaint should be dismissed; this time for good.

## ARGUMENT

### I.   THE SAC FAILED TO FIX THE ORIGINAL COMPLAINT'S FAILURES

#### A.   The SAC Should Again Be Dismissed for Puzzle Pleading

Plaintiff claims that by addressing "a handful of technical flaws," he has overcome the issues that led to dismissal. Opp. at 3. These fixes still result in textbook puzzle pleading.

First, Plaintiff's proposed cure is the "replac[ement] [of] the 'repeats and realleges' language with," *id.*, with references to eleven paragraphs, *each* citing so many *other* paragraphs as to effectively cross-reference the entire SAC. For example, ¶ 316 cites *forty-four* preceding

paragraphs. Plaintiff has "compiled a series of statements—almost all of which contain multiple passages presented in the form of lengthy block quotes—and then paired each series of statements to the same conclusory list of deficiencies." *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.* 806 F. Supp. 2d 1267, 1293 (N.D. Ga. 2011) (dismissing action). The SAC is thus "a classic example of puzzle pleading" and "unacceptable" under the PSLRA, *id.*, which requires Plaintiff to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).[2]

Second, the Opposition fails to address the prolixity of the SAC. MTD at 7–8. The R&R rejected the first amended complaint in part because it "comprise[d] 371 separate paragraphs," many lacking a "statement of the factual and legal basis for relief." R&R at 16. Now pressing with 382 paragraphs, Plaintiff does not address the numerous authorities within and outside the Eleventh Circuit that have dismissed complaints for this same reason. *See* MTD at 7–9.

### B. The Opposition Confirms the SAC's Intrinsic Flaws

Plaintiff generally disputes that the SAC's changes reflect anything about the strength of his underlying claims. Opp. 4. But his deletions and wordsmithing matter, as Defendants highlighted. Plaintiff does not meaningfully dispute any of the following points:

- Plaintiff's failure to plead the inapplicability of the statutory safe harbor, after removing it from the original complaint, confirms that many of the challenged statements were protected forward-looking language. MTD at 5. Plaintiff's word choices—changing "projected" to "asserted," *id.* at 4—do not change the fact that Lilium's *statements themselves*, rather than Plaintiff's framing, were always forward-looking. *Id.* at 4–5.

- Plaintiff's retreat from the short-seller reports confirms the Iceberg attacks could not serve as the basis for a securities claim. *Id.* at 6.

- When Defendants noted that the SAC deleted the "Presumption of Reliance" section, *id.* at 5–6, Plaintiff simply claimed that his reliance should be assumed, Opp. at 4. There is no basis for such an unpleaded assumption.

## II. PLAINTIFF DOES NOT STATE A FRAUD CLAIM UNDER SECTION 10(b)

### A. Plaintiff Again Fails to Identify Any Actionable Statement or Omission

The Opposition abandons any challenge to statements regarding Defendants' financial projections, ¶¶ 221–24, and partnerships with Palantir and Azul, ¶¶ 245–46, 248–49. *Jones v. Bank of Am.*, 564 F. App'x 432, 434 (11th Cir. 2014) (failure to respond to points in motion

---

[2] *See also Hattaway v. Apyx Med. Corp.,* 2023 WL 4030465, at *7 (M.D. Fla. June 15, 2023) (dismissing complaint where "it w[as] difficult to discern exactly which parts of Defendants' [alleged false or misleading statements] Plaintiff challenge[d] or why").

concedes them). Plaintiff fails to revive statements regarding batteries, hover time, range, and timeline, as each are protected by the PSLRA's safe harbor, not false, or inactionable opinions.

### 1. No False Statements Regarding Batteries, Hover, Range, or Timeline

**Batteries.** Plaintiff does not contest that Lilium had an exclusive license for batteries capable of >330Wh/kg. ¶ 176. He argues instead that investors understood Lilium had *already* achieved battery performance targets planned for future commercial vehicles. Opp. at 8–9, 10.[3] No reasonable investor would arrive at Plaintiff's reading, when reading statements "together and in context." *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004) (affirming dismissal).

Battery Statements Are Forward-Looking.[4] The Eleventh Circuit holds that context is key when evaluating if a statement is forward-looking. MTD at 13 (citing *Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022)). Plaintiff ignores this. He flags an investor call remark, "[we] have secured battery technology that allows us to achieve our launch range of 150 miles," Opp. 8, 10, ignoring that the *very next* sentence explained the technology "has been proven on our own test benches," not in an aircraft, Ex. 17 at 4.[5] The accompanying slides show the statement was forward-looking, citing a "*projected* physical range," noting that 150 miles is a "*target* for entry into service," and stating these targets are "management estimates," as the "[b]attery cell technology [is] *still under development*" with the "design not yet finalized." Ex. 7 at 26; ¶ 191.[6]

The Safe Harbor Applies. Defendants identified ample risk language warning investors that while "measurements of our battery supplier have already yielded promising results," "the final technology of our batteries and other sub-systems is still under development and the design is not yet finalized." Ex. 3 at 70 ("The final cell design of our suppliers may not be able to meet the safety, technological, economical or operational requirements to support the regulatory

---

[3] The alleged "omission" of Zenlabs does not render the statements actionable. Opp. 8, 14. Lilium did not claim a different battery supplier, and it had no duty to disclose the identity of its suppliers. *See Pehlivanian v. China Gerui Advanced Materials Grp.*, 2016 WL 2859622, *10 (S.D.N.Y. May 16, 2016) (no duty to disclose counterparty to purchase agreement).

[4] Plaintiff does not contest that the majority of the challenged battery statements are forward-looking on their face. MTD at 12 (citing allegations at ¶¶ 176–77).

[5] Plaintiff's reference to *In re Tesla Sec. Litig.*, 477 F. Supp. 3d 903, 922 (N.D. Cal. 2020) backfires, revealing a failed attempt to remove statements from their context. Opp. at 8–9, 10. Tesla involved a single tweet—unadorned by any cautionary language—indicating "funding secured." Here, there is no dispute the battery contract was secured—what Plaintiffs challenges is the range. The statement was accompanied by ample cautionary language. *Infra* at 3–4.

[6] *Macquarie Infras. Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), Opp. at 9, is inapposite: it confirmed there is no liability for pure omissions and featured no forward-looking projections.

requirements and performance assumed in our business plan."). The Opposition ignores these disclosures and others. *See, e.g.*, *id.* at 63, 66, 70–71; Ex. 7 at 2; Ex. 8 at 2.[7]

**Hover Time.** The Opposition tries to deny that Plaintiff conceded that the hover time statements are estimates and projections, MTD at 4–5, 13; Opp. at 11.n.7, arguing that the statements gave the "impression" that Lilium already had such capabilities. Plaintiff's argument is absurd in light of the SAC's allegations, which recognize that there was no commercial jet when the statements were made. *E.g.*, ¶ 128 (no functioning demonstrator at start of class period), ¶ 129 (demonstrator "had still not accomplished" crucial maneuvers as of end of class period). This was not a secret to investors, *e.g.*, ¶ 89 (newspaper witnessed demonstrator flight), and context further confirms the hover statements were forward-looking.[8]

**Range.** The Opposition does not contest that range statements were forward-looking. Opp. at 10; MTD at 13. Lilium warned that "*forecasted performance model targets* in terms of aircraft range" was based on "our current testing and projections," not current capabilities, because "our Lilium jet is not yet fully operational." Ex. 3 at 63, 190 ("measurements of the pouch cells . . . *projected* to enable a physical aircraft range of 155 miles (our *target for entry into service*)"). Plaintiff argues the cautionary language was not meaningful because the batteries "could not do what Lilium promised." Opp. at 11. But Lilium did not make any such promise.

**Regulatory Timeline.** The Opposition does not contest authority holding that timeline statements are inherently forward-looking. MTD at 14.[9] Plaintiff argues that risk factors "double[d]-down" on timeline misrepresentations. Opp. at 12. Plaintiff does not explain how a warning that "we do not expect to launch commercial services until 2024, at the earliest, if at all," Ex. 3 at 63, does anything except put investors on notice that the timeline is aspirational.

### 2.  Many Challenged Statements Remain Inactionable Opinions

Defendants explained that estimates and projections "constitute a well-established species of opinion" because they "will vary depending on the particular methodology and assumptions

---

[7] Plaintiff concedes that the safe harbor is disjunctive, Opp. at 9; MTD at 12, and applies if the statements were accompanied by cautionary language *or* without actual knowledge of falsity.

[8] McIntosh's technical blog describes a hypothetical "mission profile," Ex. 12, with the hover time estimates as assumptions. ¶ 184 ("during take-off we are only hovering approximately ~10–25 seconds and *we also assume approximately ~20 seconds during a standard landing*").

[9] Plaintiff's challenge to Lilium's statement that the company was on its way to certifying and commercializing "not at some time in the distant future, but by 2024," Opp. at 7, concedes the principle. 2024 was plainly in the future—these statements are forward-looking.

used." MTD at 14 (citing *Martin v. Quartermain*, 732 F. App'x 37, 40 n.1 (2d Cir. 2018), and collecting cases). Plaintiff doubles down on his challenge to those assumptions, arguing that they were "presented as expert-reviewed mathematical calculations" and were not "reasonable." Opp. at 13–14. Plaintiff's arguments on both fronts ignores that the assumptions (in the White Paper and elsewhere) were fully disclosed and identified as assumptions, rendering them inactionable. MTD at 15; *see also* Ex. 11 at 2, 6, 11 (White Paper's disclosed assumptions).[10]

Nor can "CW1's opinion," Opp. at 7—or those of Professor Gollnick, Opp. at 2, 9—render the challenged statements actionable. MTD at 15; *see also Ford v. Voxx Int'l Corp.*, 2016 WL 3982466, at *6 (E.D.N.Y. July 22, 2016) ("mere opinions" of CWs "are not actionable"); *Einhorn*, 42 F.4th at 1231 (rejecting challenge to studies and assumptions "based on [plaintiff's] own studies and experts"). Plaintiff also mischaracterizes Defendants' arguments regarding batteries, focusing on "we have secured" (not challenged as opinion and indisputably true) instead of the projected range of those batteries (opinion). Opp. at 13.

### B. Plaintiff's Scienter Allegations Fail to Plead Any Defendant's State of Mind

#### 1. Plaintiff Fails to Allege Actual Knowledge

Plaintiff provides a laundry list of allegations concerning Defendants' "knowledge," but each is conclusory, discounted by disclosures, or consistent with Lilium's representations.

**Regulatory Guidelines.** Plaintiff argues that there was no basis for Lilium's timeline because the EASA and FAA had not yet finalized their eVTOL regulations. Opp. at 12. But that fact was equally known to investors, not a secret.[11] And, like other eVTOL companies, Lilium disclosed its working assumptions. Ex. 8 at 26 ("[timeline] [i]ndicative, until EASA & FAA final rules . . . are known: Lilium does not control regulatory timelines"); Ex. 3 at 114 ("Although [] management believes such assumptions to be reasonable . . . no eVTOL aircraft ha[s] yet passed certification").[12] "Companies have no obligation under 10b-5 to predict accurately future

---

[10] Plaintiff tries to distinguish *In re Philip Morris International Inc.*, 89 F.4th 408, 418 (2d Cir. 2023), MTD at 15, because Lilium provided "specific numerical values," Opp. 13 n.8. The challenged numerical values are the *assumptions* backing opinions about potential performance, which are inactionable. *See In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1280 (S.D. Fla. 2017) ("entire list of factors" underlying a projection protected as forward-looking).

[11] Plaintiff's argument that "progress toward EASA certification had only just begun" and the longest phase was "years away," Opp. at 12, is circular. Plaintiff cannot plead actual knowledge by treating as fact his own hindsight-based expectations of the timing of certification phases.

[12] The bases for Company expectations were also disclosed. Ex. 3 at 184 (regulator engagement since 2017), 193, 197 (EASA guidelines); Ex. 15 at 8 (insights gleaned from certification).

regulatory action." *Carvelli v. Ocwen Fin. Corp.*, 2018 WL 4941110, at *7 (S.D. Fla. Apr. 30, 2018), *aff'd*, 934 F.3d 1307 (11th Cir. 2019).

**Prototype Construction.** Plaintiff similarly argues the timeline was unrealistic because Lilium was still in the prototype phase. Opp. at 12. Again, Lilium disclosed all of this. Ex. 3 at 182 (protoypes built to date); Ex. 18 at 4 (plans to test transition to horizontal flight); Ex. 18 at 1 (expecting cash spending "as we progress through the preliminary design review"). Disclosed results cannot be used as a basis to infer scienter. *City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, 2023 WL 27154, at *3 (S.D. Fla. Jan. 3, 2023). That the Jet's design "was far more complicated than [] represented," Opp. at 12, is Plaintiff's subjective speculation.

**Batteries.** Plaintiff claims that Defendants "knew" batteries capable of powering the Jet were "at least 7–8 years from availability." Opp. at 12. Just because *Plaintiff* says the batteries were years away, does not mean Defendants thought the same. It is unclear how Defendants could have "actual knowledge" of the batteries' commercialization date when *no one* knew with certainty when such technology would become broadly available. Lilium expected that the technology would be available on a proprietary basis on a timeline consistent with the Jet's commercial launch—while repeatedly disclosing the timeline was uncertain. *E.g.,* Ex. 1 at 190.[13]

**Employee Opinions.** A handful of employees departing over "concerns" about the timeline, Opp. at 12, does not show that Defendants had "actual knowledge" that the timeline was infeasible. That hundreds of employees *stayed* cuts against Plaintiff's theory. The allegations should be discounted for relying on a second-hand report based on anonymous accounts. SAC at 30–31 (citing *Forbes* article). And Plaintiff *himself* quotes one of the former employees as saying that, while they disagreed with the timeline, they "[are] not saying Lilium is guilty of [] fraud." ¶ 133. Nor does Yemsi describing the timeline as "extremely difficult" mean it was infeasible (let alone fraudulent), especially in light of Lilium's cautionary language. *Supra* at 4; Ex. 3 at 40, 63.

The CW1 allegations, Opp. at 6, fare no better. Plaintiff concedes that CW1 had no direct reports and was employed at Lilium for only a year. Ex. 19. CW1's experience at Boeing does not speak to whether CW1 was privy to the broader picture of Lilium's operations.[14] As to

---

[13] Plaintiff claims that Defendants knew that the CEO of Lilium's battery supplier had been accused of misrepresenting battery capacities at a different company. Opp. at 8. Unadjudicated allegations from another lawsuit cannot be used to infer scienter. *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, at *5 (N.D. Cal. May 24, 2023) (striking under Rule 11 allegations based on pleadings from separate proceeding).

[14] Plaintiff's citation to *Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 772

CW1's "personal" communications with Yemsi, Opp. at 15, Plaintiff fails to identify any details about the time, place, or contents of that supposed meeting. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006) (rejecting CW allegations that "failed to allege what was said at the meeting, to whom it was said, or in what context"); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008) (same). Rather than credit embellishments of anonymous statements, the Court can ask CW1 to speak for himself. There may be a surprise.

**"School Project."** Plaintiff notes that Wiegand "designed the jet as a school project, despite having no real-world aeronautics experience." Opp. at 13. While Wiegand's aerospace degree hardly connotes lack of expertise, it is unclear how it has any bearing on fraudulent intent. Even assuming Lilium began as a "school project," so did Facebook and Google.

**Core Operations.** Plaintiff claims that Wiegand had fraudulent intent because he "was a founder of Lilium" and was "'intimately involved' in the Jet's development." Opp. at 13. But scienter cannot be inferred merely by virtue of an executive's role. Plaintiff never alleges any particularized facts about what Wiegand knew, and patently mischaracterizes the core operations theory—a quintessential example of generalized, circumstantial pleading—as "actual knowledge." *See Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1057 (N.D. Cal. 2020) ("Plaintiffs do not allege [] actual knowledge" but instead "invoke the core operations doctrine").

### 2.     Plaintiff's Allegations Are Insufficient to Infer Scienter

Plaintiff next argues that even if he has failed to plead actual knowledge, the Court can *infer* scienter via inapposite "red flags", design changes, and allegations of motive. This fails.

**Red Flags.** Plaintiff's red flag allegations fail to show "severe recklessness" under the theory's rigorous standard. *See* First MTD at 17 (collecting cases); *see also Reiter v. Fairbank*, 2016 WL 6081823, at *13 (Del. Ch. Oct. 18, 2016) (no scienter where allegations "plead at most . . . yellow flags of caution"). As a last resort, Plaintiff argues that the red flags should be examined "collectively" with other "circumstantial evidence." Opp. at 14. That Defendants defended the viability of the Jet's design cuts *against* scienter because it shows that they believed in their product, and where "competing analysis or interpretation of data is itself reasonable, there is no false statement." *Kleinman v. Elan Corp.*, 706 F.3d 145, 154 (2d Cir. 2013). The

---

(9th Cir. 2023), Opp. at 7, is distinguishable. There, the 20 CWs cited did not merely express a difference of opinion with Defendants; rather, they were told to falsely mark deals as secured when no such deals had been made. *Id.* at 771–72. Indeed, the court explicitly distinguishes between CWs' "subjective assessments" and their allegations "of verifiable facts." *Id.* at 772.

suggestion that Defendants fabricated  "secret information" validating their views, Opp. at 15, is entirely speculative. Lilium also had no duty to disclose proprietary information. *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 459 (S.D.N.Y. 2019) ("protection of proprietary information is the quintessence of a generalized business motive"). None of these allegations, "separately or in aggregate," plead scienter. *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253, 1283 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010).[15]

**Design Changes.** Plaintiff next argues that scienter can be inferred because Defendants "touted features" before "confirm[ing] their feasibility." Opp. at 15. Plaintiff again ignores that the uncertainties associated with the R&D process were disclosed. Plaintiff further argues that because Defendants' confidence in the timeline was due, in part, to the Jet's simple design and lack of traditional landing gear, Defendants' later addition of backup landing gear indicates that Defendants knew the Jet would have insufficient battery reserves. Opp. at 15. But Plaintiff assumes, without support, that Lilium's backup gear equates to "traditional landing gear" and thus has the same implications concerning battery reserves and design complexity.

**Motive & Opportunity.** Contrary to Plaintiff's argument, Opp. at 16, the desire to close a merger and the receipt of equity compensation both constitute common business incentives insufficient to infer scienter. *See In re Danimer Sci., Inc. Sec. Litig.,* 2023 WL 6385642, at *11 (E.D.N.Y. Sept. 30, 2023) (alleged motive to complete de-SPAC did not suffice); *accord Murdeshwar v. Search Media Holdings Ltd.*, 2011 WL 7704347, at *15–18 (S.D. Fla. Aug. 8, 2011); *see also In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1346 (10th Cir. 2012) (incentive-based compensation is "common among executives" and thus "does not ordinarily indicate scienter").[16] As Plaintiff himself admits, the alleged "benefit" that Defendants received from the de-SPAC was simply more Lilium stock. Opp. at 16. It makes little sense why

---

[15] Plaintiff cites several cases, Opp. at 14–15, as evidence that there are federal securities actions in this jurisdiction that utilize a "red flags" theory. As previously explained, First MTD at 16–17, almost all such "red flags" references arise in the narrow context of accounting violations. Regardless, Plaintiff's cases undercut his own arguments: in both *Pegasus* and *Mizarro,* the courts *granted* defendants' motion to dismiss for failure to plead scienter. Plaintiff's third case, *Rosky,* is inapposite, as it is a derivative shareholder suit, not a direct class action.

[16] Plaintiff's citation to *In re Stable Road Acquisition Corp.*, 2022 WL 2762213, at *4, 10 (C.D. Cal. July 13, 2022) is readily distinguishable. There, defendant SPAC executives failed to disclose that the CEO of the company with which they were merging posed a *national security risk*, a danger which had been flagged by the US Department of Defense and which ultimately resulted in the CEO's detainment by the FBI. Plaintiff's citation to *SEC v. Kokorich*, 663 F. Supp. 3d 63, 81 (D.D.C. 2023) is likewise unavailing, as it concerns the same set of facts.

Defendants kept the majority of their stock rather than selling it. That Defendants personally invested in Lilium's later $292 million financing round negates any fraudulent inference. Ex. 14 at 1; Ex. 15 at 2, 4; *Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (no scienter because "it would have made no economic sense for defendants to invest literally billions . . . in a venture [] they knew would fail").

### C.      Plaintiff Fails to Plead Loss Causation

**Iceberg Report Is Not a Corrective Disclosure.** Plaintiff relies again on the Iceberg Report, asserting it contains non-public information. Opp. at 17. It instead "mere[ly] repackag[es]" public information, and thus cannot stand as a corrective disclosure. *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013). The examples Plaintiff tries to cite, Opp. at 17, are off-the-cuff reactions by various outsiders to already disclosed facts; unchanged from briefing on Defendants' first Motion, none revealed anything new. First MTD at 19–20.

**Plaintiff Fails Plead a Plausible Cause of the Stock Drop.** Plaintiff disclaims any responsibility to address "other potential causes for the drop in stock price," Opp. 17. But he is not ignoring a *potential* cause. He is ignoring an event that was *already* causing the price of LILM to drop *before* the Iceberg Report was published. First MTD at 19.

## III.     PLAINTIFF FAILS TO PLEAD SCHEME LIABILITY

Plaintiff invokes *Lorenzo* to assert that scheme liability need not exist independently of a misrepresentation claim. Opp. at 18–19. But *Lorenzo* considered instead whether a party that does not actually "make" the alleged misrepresentations can be liable for disseminating them. *Lorenzo v. SEC*, 587 U.S. 71, 78 (2019). Courts have warned against such attempts to mischaracterize *Lorenzo*. *SEC v. Rio Tinto PLC*, 41 F.4th 47, 55 (2d Cir. 2022) (no scheme where defendant was "participant in a scheme through which the statements were made").[17]

As backup, Plaintiff also invokes "conduct" he argues is distinct from his misrepresentation claims, Opp. at 19, but which fails to establish misconduct, let alone *knowing*

---

[17] Plaintiff cites three cases to support his flawed interpretation of *Lorenzo.* Opp. at 19. All are inapposite. *SEC v. Complete Bus. Sols. Grp.*, 538 F. Supp. 3d 1309, 1318–19, 1340 (S.D. Fla. 2021) (alleging that defendants recruited others to sell fraudulent promissory notes, set up fund model to evade detection*,* and held out twice-convicted felon ordered to pay $14 million for grand larceny and money laundering as seasoned businessman); *Happy Tax Franchising v. Hill*, 2023 WL 418820, at *7, 12 (S.D. Fla. Jan. 5, 2023) (no scheme because so-called auditor defendant was not an issuer and could not have been motivated by intent to defraud investors); *In re Alphabet Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021) (rejecting idea that Rule 10b-5(a) and (c) "are violated *only* when conduct other than misstatements is involved").

-9-

misconduct, as is required. *Mizzaro*, 544 F.3d at 1238 (scienter required for scheme liability); *Henningsen v. ADT Corp.*, 161 F. Supp. 3d 1161, 1209 (S.D. Fla. 2015) (same). Plaintiff fails to explain how Wiegand's attempt to partner with his university, Opp. at 19, is different from typical business activity. *Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*, 2009 WL 4730315, at *8 (N.D. Ga. Dec. 4, 2009) (intent to build business relationships insufficient). Plaintiff's allegations about the White Paper and Zenlabs partnership, Opp. at 19, are duplicative of the deficient misrepresentation claims. *Supra* at 3 n.3; 5. *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 858 (11th Cir. 2016) (dismissing claim where no conduct beyond misstatements).

## IV.       PLAINTIFF ALSO FAILS TO STATE A CLAIM UNDER SECTION 14(a)

Plaintiff argues that scienter is not required for 14(a) claims. Opp. at 19. Where, as here, "plaintiffs assert Section 14(a) claims grounded in alleged fraudulent conduct, they are subject to heightened pleading requirements, even if they disclaim reliance on a fraud theory." *Lee v. Frost*, 2021 WL 3912651, at *4 n.3 (S.D. Fla. Sept. 1, 2021); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) ("it [is not] enough to present a general disclaimer . . . to immunize the nonfraud claims from the Rule 9 requirements"). Plaintiff's "general disclaimer" of fraud, ¶¶ 374, 379, does not change the fact that his Section 14(a) claim relies on the same allegations as those of his fraud claim. Plaintiff also fails to connect the de-SPAC transaction to his alleged loss, since shareholders could redeem their shares even if they voted for the de-SPAC. MTD at 20. Neither of Plaintiff's authorities, Opp. at 20, involved de-SPACs where Plaintiff could redeem regardless of the vote result.

## V.       PLAINTIFF ALSO FAILS TO STATE A SECURITIES ACT CLAIM

Plaintiff concedes his Exchange Act and Securities Act claims rely on the same allegations. SAC Counts I, II, III, VII, and VIII (listing ¶¶ 228, 233, 235–36, 243, and 245). Rather than contend with binding authority requiring that Rule 9(b) be applied when Securities Act claims sound in fraud, MTD at 20, Plaintiff argues the SAC is exempt because he has "carefully couched" these claims "in the language of negligence," Opp. at 20. Courts routinely find nominal "general disclaimer[s]" of fraud—see ¶¶ 348, 357, 364, 369, 374—unconvincing where the gravamen of the complaint is fraud. *Wagner*, 464 F.3d at 1278.

## CONCLUSION

Defendants respectfully request that the Court dismiss this action with prejudice.

Date: May 16, 2024                    Respectfully submitted,


 _/s/ Bradley S. Shraiberg_____
Bradley S. Shraiberg (Fla. Bar No. 121622)
Patrick Dorsey (Fla. Bar No. 0085841)
**SHRAIBERG PAGE P.A.**
2385 NW Executive Center Dr Ste 300
Boca Raton, FL 33431-8530
(561) 443-0800
bss@slp.law
pdorsey@slp.law

Boris Feldman
Doru Gavril
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
855 Main Street
Redwood City, CA
(650) 618-9250
boris.feldman@freshfields.com
doru.gavril@freshfields.com

Adam Rosenfeld
Susannah Benjamin
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Ave
New York, NY 10022
(212) 277-4000
adam.rosenfeld@freshfields.com
susannah.benjamin@freshfields.com

*Attorneys for Defendants*

-11-

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on 16th day of May 2024.

*/s/ Bradley S. Shraiberg*
Bradley S. Shraiberg